## N. P. EARNEST *v.* GREENE COUNTY.

### (*Knoxville.*   September Term, 1917.)

1. **COUNTIES.   Bond issue.   Election.   Right of suffrage.**

   Constitution article 1, sec. 5, providing that right of suffrage, "as hereinafter declared," shall never be denied any person, except on conviction, applies only to the class of elections enumerated in article 4, section 1, providing that every male of certain qualifications may vote for members of the general assembly, legislature and other civil officers for the county or district in which he resides, and not to an election to determine whether a county shall issue bonds for highways. (*Post, pp.* 445, 446.)

   Constitution cited and construed: Art. 1, sec. 5; Art. 4, sec. 1.

2. **COUNTIES.   Bond issue.   Election.   Suffrage.**

   The General Assembly under Constitution article 2, sec. 29, empowering it to authorize counties and incorporated towns to impose taxes for county and corporation purposes, having power to authorize a county to issue bonds for highways, without an election on the question of issuance, Priv. Acts 1917, chapter 100, authorizing such an issuance on the vote of a class having a property interest involved in the result of the election, violates no legal or constitutional right of any one having no such property interest.   (*Post, pp.* 446-448.)

   Acts cited and construed: Acts 1917, ch. 100.

   Constitution cited and construed: Art. 2, sec. 29.

3. **TAXATION.   Uniformity and equality.   Highways.   Counties and cities.**

   Priv. Acts 1917, chapter 100, section 5, excepting from taxation for payment of bonds to be issued by a county for macadamizing and grading existing roads, property in incorporated

Earnest v. Greene County.

municipalities where a street tax is levied and collected for maintaining their streets, being regarded, as it must, as an effort of the general assembly in the exercise of its discretion, under Constitution article 2, section 29, empowering it to authorize the several counties and incorporated towns to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law—to equalize burdens between the county and municipal entities in the construction and maintenance of a single system of highways—does not contravene Constitution article 2, section 28, requiring taxes to be equal and uniform. (*Post, pp.* 448-452.)

Acts cited and construed: Acts 1907, ch. 100, sec. 5.

Cases cited and approved: King v. Sullivan County, 128 Tenn., 393; Raulston et al. v. Marion County et al., 133 Tenn., 433; Smith et al. v. Carter et al., 131 Tenn., 1; Ferguson v. Tyler, 134 Tenn., 25.

Case cited and distinguished: Patterson v. Washington County, 136 Tenn., 60.

Constitution cited and construed: Art. 2, sec. 28.

FROM GREENE.

Appeal from the Chancery Court of Greene County. —HAL. H. HAYNES, Judge.

DIVINE & GUINN and W. E. F. MILBURN, for appellants.

SUSONG & BIDDLE, for Greene County.

Mr. Justice Buchanan delivered the opinion of the Court.

The bill sought an injunction restraining the issuance of bonds authorized by House Bill 456, Acts of the General Assembly of 1917, passed on March 2, 1917, approved March 6, 1917 (see chapter 100, page 345, Private Acts of 1917), upon the ground that said act was unconstitutional and void.

By way of defense a demurrer was interposed, which the chancellor sustained and dismissed the bill, and from his decree complainants have appealed and assigned errors.

The act assailed, in its first section, authorizes Greene county to issue interest-bearing bonds in the sum of $510,000 "the proceeds of the sale of which shall be applied to macadamizing and grading the roads already built in said county, and grading and macadamizing other roads as hereinafter designated." The second section provides that "said bonds shall not be issued until issuance has been approved by a majority of the qualified voters of Greene county, voting at an election herein provided for," and this section provides for the calling of such election, and that "all qualified voters living within the county excepting those living within incorporated municipalities which levy a street tax to maintain and keep up the streets, shall be entitled to vote in this election, and all persons living in such municipalities, who own real estate outside of same at the time of

Earnest v. Greene County.

the election, shall be entitled to vote in said election," etc.

The first assignment of error insists that the limitation upon the right of suffrage apparent from what has been said above is in contravention of section 5 of article 1 of the Constitution of the state, which provides:

"That elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by a court of competent jurisdiction."

The section just quoted, in our opinion has no application to the kind of an election contemplated by the act assailed. Section 5 must be read in connection with section 1 of article 4 of the same Constitution, which provides:

"Every male person of the age of twenty-one years, being a citizen of the United States, and a resident of this State, for twelve months, and of the county wherein he may offer his vote for six months, next preceding the day of election, shall be entitled to vote for members of the general assembly and other civil officers for the county or district in which he resides; and there shall be no qualification attached to the right of suffrage, except that each voter shall give to the judges of election where he offers to vote, satisfactory evidence that he has paid poll taxes

assessed against him, for such preceding period as the legislature shall prescribe, and at such time as may be prescribed by law, without which his vote cannot be received, and all male citizens of the State shall be subject to the payment of poll taxes and to the performance of military duty within such ages as may be prescribed by law. The general assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box."

When the two sections are read as *in pari materia* it is manifest that the kind of elections referred to in section 5 of article 1, are those enumerated in section 1 of article 4. The rights of suffrage which section 5 declares shall be "free and equal" is the right it refers to in section 5 of article 1, as "hereinafter declared," meaning as declared in section 1 of article 4. No mention occurs in the last-named section of the right of suffrage in such an election as is provided for by the act here in question.

It is next insisted that the act violates section 1 of article 4 of the Constitution set out supra; but this cannot be true if we are correct in the views just announced, and in this connection it may not be amiss to add to what has been said above that the sections of the Constitution above quoted must also be read in connection with section 29 of article 2 of the Constitution, which provides, in part, as follows:

Earnest v. Greene County.

"The general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes . . . in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation."

Under the section just quoted power was vested in the general assembly to authorize the issuance of the bonds in question without requiring an election to be called, but the assembly saw fit to allow a limited electorate to vote upon the question. The electorate allowed this privilege were those above stated; they were those who owned property so located in the county as to be onerated by the fifth section of the act with taxes annually levied to pay inerest on the bonds, and to create a sinking fund for their ultimate redemption. All of the class of persons whose property interests were involved in the result of the election, and who were qualified voters of Greene county were thus given a vote. Now, when it is remembered that the general assembly might have exercised its power under the Constitution without conferring on any class of citizens the right to vote on the particular question, it is clear that the concession of a right to vote to a class of persons having a property interest involved in the result of the election was no violation of any legal or constitutional right of any class which had no such property interest.

It is next said that the act violates sections 28 and 29 of article 2 of the State Constitution. This is based on the fact that by the fifth section of the act all of the taxable property and privileges of the county are made subject to an annual tax levy for the purpose of paying interest on the bonds and creating a sinking fund for their ultimate redemption, except that the property located within "incorporated municipalities where a street tax is levied and collected for the purpose of keeping up and maintaining their streets."

In *King* v. *Sullivan County*, 128 Tenn. (1 Thomp.), 393, 160 S. W., 847, the bond act assailed was passed for the purpose of building pike roads and authorized the levy of taxes on all property in the county, including that within the corporate limits of any municipality. It was insisted in that case that the scheme of the legislation was unequal and unjust, and violated the above-quoted part of said section 28, but the insistence was rejected. It was said that the quoted part of section 28 must be construed in connection with section 29 of the same article quoted supra, and it was further said:

"The uniformity required by section 28 of article 2 is limited to uniformity in rate, assessment, and valuation of the particular tax involved. It has no reference to a uniformity of the sum total of taxes which a citizen is required to pay; that is, it does not require that the total taxes assessed against property situated in a municipality shall not exceed the sum

total of taxes assessed against property located outside of a municipality.  It does require that there shall be uniformity of valuation and assessment of property for purposes of taxation, and that the tax levy for any given purpose shall be uniform throughout the territory to which it is applied.  In this particular case, it would not be competent to authorize a levy of taxes on property inside the city of Bristol at a rate of taxation more or less than the same levy upon property outside the corporation.''

It was also held that because the building of pike roads was a proper county purpose and complainant's property was located within the county he was liable for the tax, notwithstanding the fact that the same property so onerated with the tax for the county purpose was also subject to be taxed for municipal purposes.

In the present case it appears that the only property which escapes taxation for the purposes of the act in question is that located within the corporate limits of the city of Greeneville.  It cannot be denied that in order to meet the requirements of section 5 of the act the exception of property located within the corporate limits of Greeneville will impose some additional burden on the property located in the county outside of said corporate limits and made subject to the tax imposed by section 5.  But under the above-quoted construction of section 28 made in the opinion of the court in *King* v. *Sullivan County*, we think the imposition of this additional burden on

138 Tenn.—29

property located outside of the corporate limits and within the county for a county purpose is not a violation of said section 28. This conclusion is based on the construction of said section above quoted, in connection with the fact that, under section 29, where the general assembly is clothed with power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, it must be held to be invested with a discretion to equalize burdens as far as may be practicable in the levy of taxes for such highways. The real estate constituting an incorporated city or town located in a county, though located in a separate corporate entity, is yet also a part of the county. Its streets are but continuations of the county highways leading into them (see *Raulston et al.* v. *Marion County et al.*, 133 Tenn. [6 Thomp.], 433, 181 S. W., 322), and the county highways are, in the same sense, continuations of the streets. In the actual use of the highways and streets as agencies of travel and commerce the residents of the county and towns, respectively, use the streets and highways for purposes of travel. The corporation line is no impediment to travel, though in one legal sense it is the point of segregation between the municipal corporation as an entity and the county as an entity. If the exclusion of property located in Greeneville be regarded as an effort on the part of the general assembly in the exercise of its discretion to equalize burdens between the two corporate en-

tities in the construction and maintenance of a single system of highways—and we think it must be so regarded—we fail to see that the legislature exceeded its power in the passage of the act.

In *Patterson* v. *Washington County,* 136 Tenn. (9 Thomp.), 60, 188 S. W., 613, speaking of the same section 29, of the Constitution, it is said:

"Constitutions must be construed as a whole, and no part should be given a construction which is repugnant to express authority contained in another part. The framers of that instrument evidently deemed that in matters of local taxation for county and corporation purposes, it would be wise for the legislature to have a broad discretion in the manner in which it authorized the several counties and incorporated towns to levy them."

Another objection to the act is that, as alleged in the assignment, it dismembers the county, in that it authorizes the imposition of a burden of taxation upon part, but not all, of the taxable property located in the county, but the best answer to the point is that in the execution of a legislative scheme for internal improvement section 29 of article 2 of the Constitution expressly authorizes the general assembly to recognize the county organization as one entity by the use of the words "the several counties," and also expressly authorizes it to recognize municipal corporate entities located in a county by the use of the words "incorporated towns." There is no effort here to segregate one part of the territory outside

municipal limits from other parts of the country districts of the county of Greene.

For many years prior to the adoption of the Constitution of 1870 there had grown up a legislative custom to authorize the levy of a highway tax on all lands outside of incorporated towns for the maintenance of highways of the county, and we are of opinion that the sections of the Constitution involved here should be construed in the light of that custom, unchallenged so far as we have information until this suit.

The acts considered in *Smith et al.*, v. *Carter et al.*, 131 Tenn. (4 Thomp.), 1, 173 S. W. 430, and in *Ferguson* v. *Tyler,* 134 Tenn. (7 Thomp.), 25, 183 S. W., 162, are not to be likened to the act assailed in the present case, and the ruling made in each of those cases does not conflict with our holding here.

We have considered all of the assignments of error, and, finding no merit in any of them, we affirm the decree of the chancellor.