TROTTER *et al. v.* CITY OF MARYVILLE *et al.*

(*Knoxville,* September Term, 1950.)

Opinion filed December 9, 1950.

GODDARD & GAMBLE, of Maryville, for complainants.

HUGH E. DeLOZIER and JOHN C. CRAWFORD, JR., both of Maryville, for defendants.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The validity of Chapter 183 of the Public Acts of 1945, now carried in the Code as Sections, 4406.102 to 4406.126, is attacked in this case, (1) on the ground that the Act violates Article 2, Section 17, of the Constitution, which provides that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title. The bill also seeks an adjudication as to the validity of said Act insofar as it changes the charter provision of the City of Maryville with reference to calling and holding elections in that City.

The caption of the Act is:

"AN ACT authorizing incorporated cities and incorporated towns of this State to construct, acquire, improve, extend, operate and maintain public works, undertakings and projects; prescribing the mode of procedure for and regulating the issuance and sale of bonds and other obligations to finance such works, undertakings and projects; providing for the payment of such bonds and other obligations; and authorizing agreements with the holders of such bonds and other obligations."

The body of the Act sets forth a complete scheme whereby Cities and Towns of the State may erect public works projects; whether or not bonds are required to be issued to finance the project (in specified instances the City body may authorize the issuance of bonds and in other instances this issuance of bonds must be submitted to a vote of the people) and the resolution necessary to be passed in either instance; when an election by the people on an issuance of bonds for public works is required the form of the election resolution and the procedure for election to authorize the bonds; limitation on number of the elections; tax resolution for payment of the bonds; bond provisions; when the bonds are a gen-

eral obligation of the municipality etc. Suffice it to say, that in our judgment the Act incorporates within itself a complete scheme for the specific purpose of authorizing municipalities to erect public works and to pay for them in various ways, by either the issuance of bonds by the City fathers or submit the matter to the vote of the people and if the people vote favorably then the bonds are issued. In other words, it a general Act applying to all municipalities within the State relating to a specific and a primary purpose.

It is argued that since the Act provides in the body thereof for a scheme of determining whether or not the qualified voters are in favor of the issuance of bonds that this provision in the Act applying to elections in such instances is not germane to the caption or title of the Act. It is said that this provision, relating to the election, is changing the election laws of the State and setting up a new and novel way of holding an election and is thus not germane to the caption. It is primarily the argument on behalf of the appellants that since the section of the Act relating to the holding of a bond election was different from that as prescribed by the general law and as to the charter of the City of Maryville that thus the Act in its body contained two subjects and was therefore unconstitutional and in violation of Article 2, Section 17 of the Constitution.

We canot agree with this theory and contention.

"The two-subject clause of the Constitution was intended to prevent a combination in the same act of laws upon wholly different subjects; to avoid the union of incongruous matters in one statute; to secure unity of purpose in legislative enactments." *Bell* v. *Hart*, 143 Tenn. 587, 223 S. W. 996.

In *Davis* v. *Hailey*, 143 Tenn. 247, 252, 227 S. W. 1021, 1022, this Court speaking through the late CHIEF JUSTICE GREEN said:

"So far as section 17, article 2, is concerned, if the various provisions of an act are directed toward a common purpose, and that purpose is expressed in the title, it would make no difference if the several provisions of the act involved all powers of the Legislature. This section of the Constitution regulates the syntax of statutes. It imposes no restriction upon the powers exerted, nor upon the commingling of such powers, so long as the provisions of the statute are not incongruous and are germane to the subject expressed in the caption."

The one purpose of the Act under attack is to authorize the various municipal governments of the State to construct public works. Accomplishment of such a single purpose necessarily requires that bonds be issued. It is perfectly proper for the legislature, who gives the municipal government birth in the first instance, to prescribe a scheme and way whereby the municipal government can issue these bonds and get the money to pay for these public works. The Act has no other purpose. The purpose of the Act is a single purpose. Merely because various and sundry ways of accomplishing this purpose, and prescribing the means and methods of doing so, are incorporated in the Act does not give the Act a dual purpose.

"Plurality of the title is not an objection when the several plural provisions deal with, and by necessary construction are but, constituent parts of one subject." *Kizer* v. *State*, 140 Tenn. 582, 589, 205 S. W. 423, 425.

The point we are attempting to make was very well stated in the Kizer case, supra, thus:

"The unity of the subject is to be looked for in the ultimate object of the statute; it cannot with reason be held that each step towards the accomplishment of an end or object should be embodied in a separate act, and so long as the steps are of the same general nature and legitimately parts of one system, end, or object, the act is constitutional."

The City fathers of the City of Maryville unanimously passed a resolution authorizing the issuance of School bonds not to exceed the sum of Three hundred thousand ($300,000.00) dollars. This resolution was passed in conformity with the applicable provision under the legislative act attacked. After the passage of this resolution steps notifying the people of Maryville of the proposed bond issue for the purpose of erecting schools was duly given. Other notices, etc., were given in compliance with the provision of the Act in question.

The Chancellor held the Act constitutional "since it embraces one subject and that subject is contained in the title." He went further and held that since the people who vote in Maryville must be registered and that the registration books must be open twenty days before the election for the purpose of permitting them to register, this registration must be carried out; that since the Act did not provide that such registration might be carried out, this provision of the Act was unconstitutional. He was also of the opinion that since no provision was made in the Act to allow nonresidents of the City of Maryville to vote in the election (the City charter allowed those owning property in Maryville to vote) that for this reason any election held would have been illegal. For these two reasons, namely, that no provision for registration was made prior to vote and that nonresidents

owning property in the City were not allowed to vote under the call made for this bond election, the Chancellor held that the proposed election was illegal and thus entered a permanent injunction enjoining the election. The plaintiff has appealed and assigned error to the holding of the Chancellor that the Act was constitutional while the City has likewise filed assignments of error as to the holding of the Chancellor that the election was illegal for the reasons stated in his memorandum opinion.

From the argument made in open court, the briefs of counsel and the memorandum opinion of the Chancellor, it appears that the basis of his opinion was that since no specific reference was made to the charter of the City of Maryville or other laws applicable to voters in the City of Maryville in this Act, that then there was no repeal of these laws directly or by implication and that, therefore, the charter of the City of Maryville and the applicable statutory law as to registration were in effect; that since this election was called in compliance with the Act in question and did not comply with the charter of the City of Maryville or other applicable State registration laws that then the charter of the City of Maryville and the applicable registration law had precedence over the provisions of the Act here attacked. He based his reasoning on the case of *Grubb* v. *Mayor and Aldermen of Morristown,* 185 Tenn. 114, 203 S. W. (2d) 593. It is true in this case that the Chief Justice correctly and aptly again reiterated the law in reference to implied repeal but that is not the controlling point in the Grubb case. What the Chief Justice said in this case with reference to implied repeal was more or less in answer to arguments that were made in that case that the enactment of the general beer law impliedly repealed the au-

thority of the City council of Morristown to enact an ordinance banning beer in that town. The real point in the Grubb case was that "the general beer law and also the charter of [the Town of] Morristown expressly authorized the passage of the ordinance in question." *Grubb* v. *Mayor and Aldermen,* supra [185 Tenn. 114, 203 S. W. (2d) 596].

The Grubb case was therefore not in point in the instant case.

■ Here we have a general statute, applicable to all municipalities within the State, enacted for the primary purpose of dealing with a particular subject prescribing terms and conditions covering the subject matter. When such a statute is passed the terms thereof supersede the general and special statutes which conflict therewith insofar as the carrying out of the purposes for which this special statute was passed. In other words, other statutes are not repealed but they are merely superseded for the carrying out of the purposes of the act, as the one here under attack.

"There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act." 50 Am. Jur., Section 564. See also *Key* v. *Harris,* 116 Tenn. 161, 92 S. W. 235, 8 Ann. Cas. 200.

One reading this Act can gain no other impression than that it was clearly the intention of the legislature to authorize the various municipalities in the State to erect various public works, embodied in the Act, and to au-

thorize various procedural steps for the erection of these public works. That is exactly what the Act under attack did. A twin act to the Act under attack is the next succeeding chapter passed by the same legislature which applies to the various Counties of the State. Under this Act various and sundry private acts have been passed authorizing Counties to erect public works, all of which so far as we know, have been held constitutional.

Where there is conflict between the Statute incorporating the City of Maryville and the Act in question the questioned Act must prevail. *State ex rel. Weaver* v. *City of Knoxville,* 182 Tenn. 510, 188 S. W. (2d) 329. In the instant case there is clearly a conflict between the general act and that incorporating or specifying the powers of the City of Maryville. The Act in question provides the rather simple and specific means whereby the City fathers may hold this bond election; provides for those who may vote therein as those qualified to vote (living in the City of Maryville) and qualified to vote for members of the General Assembly in the election next preceding. The charter of the City of Maryville allows those living outside the City but owning property in the City to vote on City matters. The same legislature that gave birth to the City of Maryville also, at a later date, passed the Act now in question and provided a different means but a means applicable to only those things as provided for in the Act now questioned, Public Works. We think clearly that this constitutes an implied repeal of those provisions of the charter of the City of Maryville which are contrary to those as set out in the Act questioned. When there is an irreconcilable conflict the special or specific provision supersedes, controls and prevails over the general or broad provision. *State*

*ex rel.* v. *Safley,* 172 Tenn. 385, 112 S. W. (2d) 831. In other words, the holding of a bond election as specified in the questioned Act is an exception to the general or broad provision of the charter provisions of Maryville applying to the ordinary City elections. *State ex rel.* v. *Safley,* supra.

The legislature was presumed, when it passed the questioned Act, to know that the various and sundry charters of the other municipalities in the State had in them contrary provisions to those enacted in the questioned Act. The legislature is presumed to know what was in each of these Acts that had been theretofore passed. Consequently when they passed the present Act limiting in its terms to those who could vote in these bond elections to residents of the City, but who were qualified to vote for members of the General Assembly, then they are impliedly excluded, those others permitted to vote by the various and sundry charters of the different municipalities of the State. The charter provisions of the City of Maryville permit those living outside the City but owning property in the City to vote in City elections—the questioned Act does not permit them to vote. This obviously is one of the main arguments as to why this provision of the Act is illegal. We cannot agree with this argument, because the right of suffrage is not given to an elector to determine whether a City shall issue bonds for school purposes or not. *Earnest* v. *Greene County,* 138 Tenn. 442, 198 S. W. 417. The legislature generally has the right to determine the qualifications of the voters and to regulate the conduct of the election. *Cook* v. *State,* 90 Tenn. 407, 16 S. W. 471, 13 L. R. A. 183.

This right of control does not, and cannot, go beyond the limitation expressed in Article 1, Section 5

of the Constitution wherein it is provided in substance that the right of suffrage will not be denied any person, except on conviction, and applies only to the class of elections enumerated in Article IV, Section I of the Constitution wherein every male of certain qualifications may vote for members of the General Assembly, legislature and other civil offices in the district in which he resides. Clearly the limitation made in the Act now questioned does not contravene either of these sections of our State Constitution.

"The registration laws of the state do not prescribe qualifications of electors, but were enacted for the purpose of regulating the exercise of the elected franchise, and are authorized by the concluding clause of Section 1, Art. 4 of the Constitution, ordaining that the General Assembly shall have power to enact laws to secure the freedom of elections and the purity of the ballot box." *State* v. *Weaver,* 122 Tenn. 198, 201, 122 S. W. 465.

Thus our registration law "merely serves to identify them as a person qualified to vote" and the law "is merely a mode of ascertaining and determining whether or not a man possesses the necessary qualifications of a voter". *State* v. *Weaver,* supra. It was not necessary for the legislature to incorporate in this Act, applicable to its special purposes, the requirement that the people be registered to vote and that registration should be opened at a certain time before the vote was cast. The legislature provided in the questioned Act that "Any resident citizen of the Municipality who was qualified to vote for members of the General Assembly at the General Election next preceding the date of the holding of such bond election, or who is, on the date of the holding of such bond election, then qualified to vote

for members of the General Assembly shall be entitled to vote at such bond election.'' It is perfectly obvious from this qualification, as to who is entitled to vote in this bond election, that only those who were registered and qualified under the general law at the ''General Election next preceding the date of the holding of such bond election, or who is, on the date of the holding of such bond election'' is the one who is entitled to vote herein. By this Act no one is excluded who was qualified under our general laws to vote. If a person has not registered in time, or qualified himself in time to vote, then he can have no complaint because this is a personal privilege of which too many of our citizens do not avail themselves. By the Act under attack there is no let up or release of those voting from registering as required by our registration laws. As heretofore noted those qualified to vote for members of the General Assembly in the next preceding election prior to the date of calling the bond election were entitled to vote. Thus it will be seen that all of those are entitled to vote who were qualified to vote in the election immediately preceding except certain exceptional cases like those who had changed their residence etc. This Court in *Moore* v. *Sharp,* 98 Tenn. 491, 495, 41 S. W. 587, 588, held, among other things, that ''if a person changes his residence within the ward or district after registration closes he thereby loses his vote.'' The Court in this case in commenting on this assignment inter alia quoted as follows:

''If voters choose to disregard the mandates of the law, they disfranchise themselves, and neither courts of justice entertaining contests over an election nor election officers declining to receive such votes can be accused of

any disfranchisement of the voter who has lost his right by his own disregard of the law.''

In *Earnest* v. *Greene County*, supra, this Court held that the legislature might authorize the issuance of bonds without requiring an election to be called. The Court commented that if the legislature saw fit to allow a limited electorate to vote upon the question no legal or constitutional right was violated. This case is, therefore, authority for the legislative enactment in the present questioned Act.

Where bonds are to be issued for public school purposes it is not required that an election be first had. *Brittain* v. *Guthrie*, 164 Tenn. 669, 51 S. W. (2d) 848.

Because certain of the parties attacking this legislation own property within the City of Maryville and live outside, is no legal reason why this Act cannot be enforced as drawn. The question presented was decided by this Court in *King* v. *Sullivan County*, 128 Tenn. 393, 160 S. W. 847, wherein people owning property within the corporate limits of certain towns in that County were required to pay taxes on their property in the City for the purpose of bonds issued for County roads. At the same time these people were required to pay taxes on the property within the City when the roads for which the bonds were issued were in the County and outside of the City. The reasoning in this case is somewhat applicable here.

After spending several days considering the excellent briefs herein, the authorities there cited, and reviewing many other authorities, we are satisfied that the Act in question is constitutional and the provisions thereof should be carried out to effect the purposes of the Act. It thus results that we hold the Act constitu-

tional. We must reverse the decree of the Chancellor and hold that the election may be held in conformity with the Act. The costs of the cause are taxed against the appellants or the complainants in the lower court.

All concur.