# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 6, 2013 Session

## CITY OF MEMPHIS, TENNESSEE ET AL. v. TRE HARGETT, Secretary of State ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 121269II     Carol L. McCoy, Chancellor**

---

**No. M2012-02141-SC-R11-CV - Filed October 17, 2013**

---

In May of 2011, the General Assembly enacted a law providing, with certain exceptions, that all citizens who appear in person to vote must present photographic proof of their identity. The statute authorized a variety of acceptable forms of identification, one of which was a valid photographic identification card issued by an entity of the State of Tennessee. Prior to the August 2012 primary election, the City of Memphis Public Library issued photographic identification cards to its patrons. When two Shelby County residents attempted to vote in the primary using photographic library cards as means of identification, however, election officials declined to accept the cards as the requisite proof. The two residents and the City of Memphis filed a declaratory judgment action against the Secretary of State, the State Coordinator of Elections, and the Attorney General, arguing that the photographic identification requirement violated constitutional protections and that the City of Memphis qualified as an entity of the state authorized to issue valid photographic identification cards through its public library. The trial court denied relief on all counts, ruling first that the plaintiffs lacked standing and holding in the alternative that the photographic identification requirement did not violate the state constitution and that the City of Memphis did not qualify as an entity of the state. The Court of Appeals affirmed in part and reversed in part, holding that each plaintiff had standing to sue and that photographic identification cards issued by a municipal library complied with the statute for voting purposes, but also concluding that the photographic identification requirement did not violate constitutional principles. Following the grant of an application for permission to appeal, briefing, and oral argument, the General Assembly enacted amendments to the statute which, among other things, precluded the use of photographic identification cards issued by municipalities or their libraries for voting purposes. In light of these recent amendments, we hold that each issue in this appeal that pertains to the validity of the Memphis Public Library cards as photographic identification is now moot. We further hold that the City of Memphis lacks standing, and, although the two residents of Shelby County have standing to file a declaratory

judgment action, the photographic identification requirement, both on its face and as applied in this instance, meets constitutional scrutiny. Accordingly, we affirm the judgment of the Court of Appeals on the issue of constitutionality.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

William E. Young, Solicitor General; Steven A. Hart, Special Counsel; and Janet M. Kleinfelter, Deputy Attorney General, for the appellants, Tre Hargett, Secretary of State; Robert E. Cooper, Jr., Attorney General and Reporter; and Mark Goins, State Coordinator of Elections, all in their official capacities.

George E. Barrett and Douglas S. Johnston, Jr., Nashville, Tennessee, and Herman Morris, Jr. and Regina Morrison Newman, Memphis, Tennessee, for the appellees, City of Memphis, Tennessee, Daphne Turner-Golden, and Sullistine Bell.

**OPINION**
**I. Facts and Procedural History**

On May 30, 2011, the Governor signed into law the Tennessee Voter Identification Act (the "Act"), which modified the requirement for Tennessee voters to supply "evidence of identification" in order to cast an election ballot. Tenn. Code Ann. § 2-7-112(a)(1)(B) (Supp. 2012). The Act, which took effect on January 1, 2012, required photographic identification ("photo ID") in one of the following forms: (1) a Tennessee driver's license; (2) "a valid identification card issued by a branch, department, agency or entity of the State of Tennessee, any other state, or the United States authorized by law to issue personal identification," excluding any identification card issued to a student by an institution of higher learning; (3) an identification card issued pursuant to Tennessee Code Annotated section 55-50-336;[1] (4) a United States passport; (5) "[a] valid employee identification card issued by a branch, department, agency or entity of this state, any other state, or the United States authorized by law to issue employee identification"; (6) a United States military identification card; and (7) a retired state employee identification card issued pursuant to

---

[1] Section 55-50-336 (2012) authorizes the issuance of photo ID cards that are valid for identification purposes only. The cost of obtaining or renewing a photo ID card is ordinarily $7.50, Tenn. Code Ann. § 55-50-323(a)(2)(J)(i) (2012), but an individual may obtain one for free by affirming in writing that the individual does not have a valid photo ID, is a registered Tennessee voter, and needs the photo ID for voting purposes, id. § 55-50-336(g)(1).

Tennessee Code Annotated section 8-50-118.[2]  Tenn. Code Ann. § 2-7-112(c) (amended 2013).  Several categories of voters are exempted from the requirement of presenting evidence of identification, including any voter who is either "indigent and unable to obtain proof of identification without payment of a fee or who has a religious objection to being photographed," id. § 2-7-112(f); voters who are eligible to cast an absentee ballot, see id. § 2-6-201 (2003 & Supp. 2012) (amended 2013); voters who are unable to vote in person because of being hospitalized within twenty days of an election, id. § 2-6-401(a)(1), (d) (2003); and voters who fall under the provisions pertaining to full-time nursing home residents, see id. § 2-6-601 (2003 & Supp. 2012).  A person who attempts to vote in person but is unable to produce valid evidence of identification and does not meet the exceptions for indigent voters or religious objectors is entitled to cast a provisional ballot, which will be counted as long as the person presents valid proof of identification by the close of business on the second business day after the election.  Id. § 2-7-112(e).

As part of an effort to inform the public about the photo ID requirement, the Tennessee Department of State, Division of Elections (the "Division of Elections") provided notice by letter to every registered voter in possession of a non-photo ID card, encouraging those individuals to contact the Division of Elections for a determination of whether they had a compliant identification card and, if not, how to obtain one.  On January 18, 2012, the Memphis City Attorney issued an opinion to City of Memphis Mayor A C Wharton, Jr., advising that the City of Memphis Public Library (the "Library") qualified as an "entity of the state" under Tennessee Code Annotated section 2-7-112(c)(2)(A), and that a photo ID card issued by the Library would serve as valid evidence of identification for voting purposes.  After discussing the issue, the Library's administration decided to offer photo ID cards to its patrons.

On July 5, 2012, Mayor Wharton held a press conference to announce that the Library would offer photo ID cards that could be used in the upcoming August primary election.  On the following day, the State Coordinator of Elections, Mark Goins, sent an email to the Shelby County Election Commission (the "Election Commission") expressing the view that the Library was not an entity of the state and that its photo ID cards were not valid evidence of identification.  At a press conference four days later, Mr. Goins confirmed that the photo ID cards issued by the Library did not qualify as an acceptable form of identification under the Act.

---

[2] Retired state employee identification cards were not included in the original version of the Act but were added in a later amendment. See Act of May 10, 2012, ch. 938, § 2, 2012-3 Tenn. Code Ann. Adv. Legis. Serv. 78, 78 (LexisNexis).

On separate occasions in July of 2012, Robert White, the Chief of Staff for Mayor Wharton, accompanied Shelby County residents Daphne Turner-Golden and Sullistine Bell as they traveled to branches of the Library in order to obtain photo ID cards. According to Ms. Turner-Golden, a Tennessee photo ID card that she had obtained in January of 2012 had been stolen, leaving her without any other form of photo ID. Later, in an effort to vote early in the August 2012 primary election, Ms. Turner-Golden, again accompanied by Mr. White, traveled to two different voting locations in Shelby County. She was turned down at both locations on the basis that her library card was not a valid form of identification. At the second location, Ms. Turner-Golden cast a provisional ballot and was instructed that she would have to timely present a valid photo ID card to the Election Commission in order to have her vote counted. Mr. White also accompanied Ms. Bell to an early voting location. When she too was informed that her library card was not a valid means of identification under the terms of the Act, she cast a provisional ballot. She learned that her vote would not be counted unless she presented a valid photo ID card to the Election Commission by August 6, 2012.

On July 24, 2012, the City of Memphis, Ms. Turner-Golden, and Ms. Bell[3] (collectively, the "Plaintiffs") filed suit in federal court against Mr. Goins in his official capacity as the State Coordinator of Elections and Secretary of State Tre Hargett, alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and seeking a declaration that a photo ID card issued by the Library qualified as a valid means of identification for voting purposes. The Plaintiffs filed motions for a temporary restraining order and a preliminary injunction prior to the August 2012 primary, both of which the federal court denied. Turner-Golden v. Hargett, No. 3:12-CV-00765, 2012 WL 3202307, at *2, *9 (M.D. Tenn. Aug. 3, 2012).

The state and federal primary election was held as scheduled in August of 2012. Approximately 700,000 Tennesseans voted in the primary, and approximately 132,000 of those voters were residents of Shelby County. Thirty-two Shelby County residents who were deemed to have invalid photo ID cards cast provisional ballots, and four of those voters ultimately complied with the Election Commission's instructions to return with a valid photo ID card by the August 6, 2012 deadline. Of the remaining twenty-eight provisional voters, twenty had a Tennessee driver's license but chose not to report to the Election Commission by the deadline. Five more were eligible to cast an absentee ballot but chose not to do so.[4]

---

[3] The federal suit was originally filed by the City of Memphis and Ms. Turner-Golden. On July 30, 2012, Ms. Bell joined the suit as a plaintiff.

[4] Ms. Bell was one of the voters eligible to cast an absentee ballot. She was eligible because

(continued...)

It appears that the other three did not have a valid photo ID, were not eligible to cast an absentee ballot, and failed to obtain a valid photo ID and present it to the Election Commission by the deadline. In consequence, these twenty-eight provisional ballots were not counted.

The Plaintiffs voluntarily dismissed their federal suit following the primary and on August 31, 2012, filed a complaint in Davidson County Chancery Court, asserting claims against Mr. Goins, Secretary of State Hargett, and Tennessee Attorney General Robert Cooper, Jr. (collectively, the "Defendants"). The Plaintiffs sought injunctive relief, alleging that obtaining a photo ID before the November general election was too burdensome for Ms. Turner-Golden and Ms. Bell. At the conclusion of a hearing held in September of 2012, the trial court ruled in favor of the Defendants on all issues, holding as follows: (1) the Plaintiffs lacked standing to challenge the facial constitutionality of the Act's photo ID requirement; (2) the complaint did not assert an as-applied challenge to the constitutionality of the Act; (3) the Act did not qualify as facially unconstitutional; (4) the Plaintiffs lacked standing to seek a declaratory judgment as to the enforcement of the photo ID requirement; and (5) the City of Memphis did not qualify as an entity of the state authorized to issue photo ID cards for voting purposes.

Following an expedited briefing schedule and oral argument, the Court of Appeals affirmed in part and reversed in part, holding that the Plaintiffs had standing; that the Act met the facial constitutional standard; and that the photo ID cards issued by the Library qualified as valid proof of voter identification. City of Memphis v. Hargett, No. M2012-02141-COA-R3-CV, 2012 WL 5265006, at *1 (Tenn. Ct. App. Oct. 25, 2012). Because the early voting period for the November 6, 2012 election was underway, the Court of Appeals ordered Mr. Goins and Secretary of State Hargett to instruct the Election Commission to accept photo ID cards issued by the Library as valid evidence of identification. Id. at *13.

This Court granted the Defendants' application for permission to appeal on November 1, 2012. Although the filing of an application under Tennessee Rule of Appellate Procedure 11 ordinarily stays issuance of the mandate of the Court of Appeals, Tenn. R. App. P. 42(b), this Court lifted the stay for the limited purpose of requiring the Election Commission to accept photo ID cards issued by the Library for the November 6, 2012 general election.

Following briefing and oral argument, the General Assembly amended the Act, effective April 23, 2013, in several respects. Tennessee Code Annotated section 2-7-112(c)(2)(A), which had permitted any photo ID "issued by a branch, department, or

---

[4](...continued)
she was sixty years of age or older. See Tenn. Code Ann. § 2-6-201(5)(A).

entity of this state, any other state, or the United States," was amended to allow only photo ID cards "issued by the state of Tennessee[] or the United States." See Act of Apr. 23, 2013, ch. 178, § 1, available at http://state.tn.us/sos/acts/108/pub/ pc0178.pdf. Similarly, section 2-7-112(c)(5), which had permitted any photo ID card issued to an employee "by a branch, department, agency or entity of this state, any other state, or the United States," was amended to allow only employee photo ID cards "issued by the state of Tennessee[] or the United States." Id. § 2. Finally, a new section provided that "[a]n identification card issued by a county or municipality or entity thereof, including a public library, containing a photograph shall not be evidence of identification for purposes of verifying the person's identification on the application for ballot." Id. § 3 (to be codified at Tenn. Code Ann. § 2-7-112(g)). On April 24, 2013, this Court ordered supplemental briefing to address the effect of the amendments on the justiciability of each issue in this appeal.[5]

## II. Analysis

The original briefs present the following issues: (1) whether the Plaintiffs have standing to challenge the constitutionality and construction of the Act; (2) whether the doctrine of sovereign immunity bars the Plaintiffs from pursuing a declaratory judgment concerning the construction of the Act; (3) whether photo ID cards issued by the Library are valid evidence of identification under the Act; and (4) whether the Act impermissibly infringes upon the Plaintiffs' constitutional right to vote, either facially or as applied in this instance.[6] The parties' supplemental briefs address the question of whether any of these issues are now moot in light of the 2013 amendments to the Act.

### A. Justiciability

This Court must first consider questions pertaining to justiciability before proceeding to the merits of any remaining claims. See UT Med. Grp., Inc. v. Vogt, 235 S.W.3d 110, 119 (Tenn. 2007) (noting that justiciability is a threshold inquiry). The role of our courts is limited to deciding issues that qualify as justiciable, meaning issues that place some real interest in dispute, Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 838 (Tenn. 2008), and are not merely "theoretical or abstract," Norma Faye Pyles Lynch Family Purpose LLC v.

_____

[5] In addition, prior to oral argument, the Plaintiffs filed a motion for consideration of post-judgment facts pursuant to Tennessee Rule of Appellate Procedure 14. We have denied that motion by separate order.

[6] None of the issues raised by the parties in this appeal relate to the issue addressed by the decision of the United States Supreme Court filed on June 17, 2013, in Arizona v. Inter Tribal Council of Arizona, Inc., 133 S. Ct. 2247 (2013), which focused on the preemption of an Arizona statute that purported to impose a proof-of-citizenship voter registration requirement that conflicted with federal law.

Putnam Cnty., 301 S.W.3d 196, 203 (Tenn. 2009). A justiciable issue is one that gives rise to "a genuine, existing controversy requiring the adjudication of presently existing rights." Vogt, 235 S.W.3d at 119. Justiciability encompasses several distinct doctrines, two of which are at issue in this appeal—mootness and standing.

### 1. Mootness

To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency. Norma Faye Pyles Lynch Family Purpose LLC, 301 S.W.3d at 203-04. An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, Lufkin v. Bd. of Prof'l Responsibility, 336 S.W.3d 223, 226 (Tenn. 2011), or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment, see Knott v. Stewart Cnty., 207 S.W.2d 337, 338 (Tenn. 1948); Cnty. of Shelby v. McWherter, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). This Court has recognized a limited number of exceptional circumstances that make it appropriate to address the merits of an issue notwithstanding its ostensible mootness: (1) when the issue is of great public importance or affects the administration of justice; (2) when the challenged conduct is capable of repetition and evades judicial review; (3) when the primary dispute is moot but collateral consequences persist; and (4) when a litigant has voluntarily ceased the challenged conduct. Lufkin, 336 S.W.3d at 226 n.5 (citing Norma Faye Pyles Lynch Family Purpose LLC, 301 S.W.3d at 204).

In this instance, the Plaintiffs and the Defendants agree that the 2013 amendments to the Act rendered moot the issues of whether sovereign immunity bars the Plaintiffs' declaratory judgment suit against officers of the state,[7] whether the Plaintiffs lack standing to bring a declaratory judgment action seeking a construction of the Act, and whether photo ID cards issued by the Library are valid evidence of identification under the Act. We concur in this assessment. At the heart of each of these issues is the contention by the Plaintiffs that the City of Memphis and the Library are "entit[ies] of this state," and therefore are authorized to issue photo ID cards that qualify as valid proof of voter identification under the former version of the Act. As noted, the 2013 amendments removed the statutory language at issue and specified that photo ID cards issued by municipalities or municipal libraries are not valid evidence of identification for voting purposes. See Act of Apr. 23, 2013, ch. 178, §§ 1, 3.

---

[7] The Defendants originally argued that the doctrine of sovereign immunity prohibits the Plaintiffs from seeking a judicial determination that the City of Memphis or the Library qualify as entities of the state that are authorized to issue photo ID cards under the Act. The trial court did not address whether sovereign immunity barred the Plaintiffs from seeking relief. The Court of Appeals noted that the doctrine does not preclude a challenge to the constitutionality of a statute, but did not address whether it bars an action based on a state official's alleged failure to comply with a statute. See Hargett, 2012 WL 5265006, at *5 (citing Colonial Pipeline, 263 S.W.3d at 838).

Thus, the Plaintiffs' claims concerning the library photo ID cards are premised upon the construction of a provision that is no longer in force. Because the amended version of the Act will govern future elections, a judgment granting the Plaintiffs the interpretation they seek would not provide any meaningful relief. See Knott, 207 S.W.2d at 338; McWherter, 936 S.W.2d at 931. In consequence, the 2013 amendments have eliminated all controversy concerning the validity of photo ID cards issued by the Library, rendering moot the questions presented by that argument. Neither party has asserted that exceptional circumstances warrant an exception to the mootness doctrine, and we likewise find no such circumstances. The only questions remaining, therefore, are the Plaintiffs' challenges to the constitutionality of the Act.

### 2. Standing

The Defendants contend that the constitutional issues are also non-justiciable because the Plaintiffs lack standing to challenge the validity of the Act. While acknowledging that municipalities generally have the right to bring a declaratory judgment action, the Defendants argue that the City of Memphis has failed to show that it has any cognizable interest in the right to vote—a right that belongs to individual citizens rather than municipalities. As to the individuals' claims, the Defendants concede that Ms. Turner-Golden and Ms. Bell have alleged injuries pertaining to the August 2012 primary, but argue that because they have failed to establish the likelihood of future injury, their injuries cannot be redressed. The Defendants further contend that the absentee voting procedure in this state and the availability of free photo ID cards preclude the individual Plaintiffs from demonstrating any injury resulting from the photo ID requirement.

Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action. ACLU of Tenn. v. Darnell, 195 S.W.3d 612, 619 (Tenn. 2006); Knierim v. Leatherwood, 542 S.W.2d 806, 808 (Tenn. 1976). The proper focus of a determination of standing is a party's right to bring a cause of action, and the likelihood of success on the merits does not factor into such an inquiry. Darnell, 195 S.W.3d at 620; Petty v. Daimler/Chrysler Corp., 91 S.W.3d 765, 767-68 (Tenn. Ct. App. 2002). Every standing inquiry requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S. 737, 752 (1984).

Our jurisprudence recognizes two categories of standing that govern who may bring a civil cause of action: non-constitutional standing and constitutional standing. Non-constitutional standing focuses on considerations of judicial restraint, such as whether a complaint raises generalized questions more properly addressed by another branch of the government, and questions of statutory interpretation, such as whether a statute designates who may bring a cause of action or creates a limited zone of interests. See In re Estate of

Smallman, 398 S.W.3d 134, 148-49 (Tenn. 2013); State v. Harrison, 270 S.W.3d 21, 28 (Tenn. 2008); see also Ditto v. Del. Sav. Bank, No. E2006-01439-COA-R3-CV, 2007 WL 471146, at *3 (Tenn. Ct. App. Feb. 14, 2007) (discussing prudential considerations relevant to non-constitutional standing).[8] Constitutional standing, the issue in this case, is one of the "irreducible . . . minimum" requirements that a party must meet in order to present a justiciable controversy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also City of Chattanooga v. Davis, 54 S.W.3d 248, 280 (Tenn. 2001); Norma Faye Pyles Lynch Family Purpose LLC, 301 S.W.3d at 202-03 (noting that Tennessee courts' adoption of the various justiciability doctrines, including standing, has a basis in the separation of powers required under article II, sections 1 and 2 of the Tennessee Constitution).

To establish constitutional standing, a plaintiff must satisfy "three 'indispensable' elements." Darnell, 195 S.W.3d at 620 (quoting Petty, 91 S.W.3d at 767). First, a party must show an injury that is "distinct and palpable"; injuries that are conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry are insufficient in this regard. Id. Second, a party must demonstrate a causal connection between the alleged injury and the challenged conduct. Id. (citing Mayhew v. Wilder, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)). While the causation element is not onerous, it does require a showing that the injury to a plaintiff is "fairly traceable" to the conduct of the adverse party. Id. (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)). The third and final element is that the injury must be capable of being redressed by a favorable decision of the court. Id.; see also Davis, 54 S.W.3d at 280 (noting that the third standing element requires an injury that "is apt to be redressed by a remedy that the court is prepared to give" (quoting Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty., 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992))).

The application of these principles establishes that the individual Plaintiffs have standing to challenge the constitutionality of the Act. The City of Memphis, however, does not. The constitutional issues presented by the Plaintiffs are all premised upon injuries resulting from infringements of the right to vote, which is protected under both the state and federal constitutions. Tenn. Const. art. IV, § 1 (providing that "every person" who meets certain specified qualifications "shall be entitled to vote in all federal, state, and local elections held in the county or district in which such person resides"); Reynolds v. Sims, 377 U.S. 533, 554 (1964) ("Undeniably the Constitution of the United States protects the right

---

[8] Ordinarily, issues of non-constitutional standing are not essential to subject matter jurisdiction and are waived if not properly preserved. See In re Estate of Smallman, 398 S.W.3d at 148-49. However, "[w]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." Osborn v. Marr, 127 S.W.3d 737, 740 (Tenn. 2004).

of all qualified citizens to vote, in state as well as in federal elections."); Bemis Pentecostal Church v. State, 731 S.W.2d 897, 901 (Tenn. 1987) (discussing the "individual and fundamental" right to vote under the state and federal constitutions). The constitutional right to vote inures to the benefit of qualified citizens, such as Ms. Turner-Golden and Ms. Bell. See State v. Staten, 46 Tenn. (6 Cold.) 233, 243 (1869) (characterizing "the right to vote" as a property interest belonging to "the person who, under the Constitution and laws of the State, is entitled to it"); see also Baker v. Carr, 369 U.S. 186, 206-08 (1962) (concluding that individual Tennessee voters had standing to challenge the constitutionality of a state election statute).[9]

The individual Plaintiffs have met the first, or "injury," element of standing by asserting multiple infringements of their right of suffrage, including claims that the photo ID requirement established by the Act unlawfully burdens their ability to cast an in-person ballot, impermissibly adds a voting qualification to those enumerated in our constitution, and violates their right to equal protection by imposing different requirements for in-person and absentee voters. These claimed injuries are palpable, as opposed to conjectural or hypothetical, because they are founded upon the undisputed allegations that Ms. Turner-Golden and Ms. Bell attempted to cast in-person ballots in the August 2012 primary election but were unable to do so because they did not possess photo ID cards recognized by election officials as valid evidence of identification under the Act. Ms. Turner-Golden and Ms. Bell have likewise met the requirement of asserting a distinct injury by alleging that they were personally prevented from having their votes counted, as opposed to merely relying upon their status as citizens who may eventually seek to exercise their right to vote. As to the second element, Ms. Turner-Golden and Ms. Bell have alleged facts that demonstrate a fairly traceable causal connection between their claimed injuries and the challenged conduct. Specifically, they maintain that the Defendants' enforcement of the Act precluded them from voting without presenting one of the forms of photo ID recognized as valid under the Act, which in turn caused the various asserted infringements of their constitutional right to vote. Ms. Turner-Golden and Ms. Bell have likewise met the third element of standing because a declaratory judgment in their favor on any of their constitutional claims would render the photo ID requirement unenforceable, thereby allowing them to exercise their right to vote free of its constraints.

The Defendants' arguments that the individual Plaintiffs lack standing are without merit. The assertion that Ms. Turner-Golden and Ms. Bell could have procured a valid photo

_____

[9] In Baker, the mayor of Nashville and the cities of Knoxville and Chattanooga had intervened as plaintiffs, but the United States Supreme Court declined to address whether those parties had standing in view of the fact that their claims were identical to the claims of the individual plaintiffs. 369 U.S. at 204 n.23.

ID card free of charge or avoided the photo ID requirement by casting an absentee ballot does not negate their claimed injuries, which are predicated upon their entitlement to vote in person, free of the photo ID requirement. Addressing a virtually identical standing issue, the United States Court of Appeals for the Eleventh Circuit ruled as follows:

> Even if [the plaintiffs] possessed an acceptable form of photo identification, they would still have standing to challenge the statute that required them to produce photo identification to cast an in-person ballot. A plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient. Requiring a registered voter either to produce photo identification to vote in person or to cast an absentee or provisional ballot is an injury sufficient for standing.

Common Cause/Ga. v. Billups, 554 F.3d 1340, 1351-52 (11th Cir. 2009) (citation and internal quotation marks omitted). We concur in this assessment. Moreover, it is our view that the Defendants' arguments regarding the availability of free photo ID cards and alternate means of voting without photo ID pertain to the merits of the claim of undue burden, rather than the issue of standing. See Darnell, 195 S.W.3d at 620 ("[S]tanding does not depend upon a plaintiff's likelihood of success on the merits . . . .").

We likewise reject the Defendants' argument that Ms. Turner-Golden and Ms. Bell lack standing because their injuries relate only to their experience in past elections. The Defendants rely upon City of Los Angeles v. Lyons, in which the United States Supreme Court held that a plaintiff's standing to seek equitable relief "depended on whether he was likely to suffer future injury from the [challenged conduct]." 461 U.S. 95, 105-06 (1983). In our view, the individual Plaintiffs have met this requirement. Absent a declaratory judgment invalidating the Act on constitutional grounds, they will remain subject to the photo ID requirement in all future elections.

Unlike the individual Plaintiffs, the City of Memphis lacks standing to contest the constitutionality of the Act. The Declaratory Judgment Act, Tenn. Code Ann. §§ 29-14-101 to -113 (2012), authorizes municipalities, such as the City of Memphis, to seek a judicial determination of the validity of a statute, see id. §§ 29-14-101, -103 (2012) (providing in pertinent part that any "person" may seek a declaratory judgment regarding the validity of a statute and defining "person" to include municipalities). Nevertheless, in order to demonstrate standing to seek a declaratory judgment, a political subdivision of the state, including a municipality, "is limited to asserting rights that are its own," meaning that it

cannot merely "assert the collective individual rights of its residents."[10]  56 Am. Jur. 2d Municipal Corporations, Counties, and Other Political Subdivisions § 734, at 817-18 (2010). In this instance, the only injury alleged by the City of Memphis is that the Defendants violated its statutory right to issue photo ID cards by refusing to recognize it or the Library as entities of the state.  This injury, however, relates only to the issues involving the validity of the photo ID cards issued by the Library, all of which we have determined to be moot in light of the 2013 amendments to the Act.  The City of Memphis has not attempted to articulate any injury relating to the constitutional issues advanced in this appeal, which are the only issues that remain justiciable following the 2013 amendments.  See Warth v. Seldin, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.").  Our consideration of the constitutionality of the Act is, therefore, limited to the claims of the individual Plaintiffs.

### B. Constitutionality

The individual Plaintiffs[11] claim infringements of several protections of their right to vote guaranteed by the Tennessee Constitution.  In particular, they assert that the Act, both facially and as applied in this instance, creates an undue burden on their right to vote, in violation of article I, section 5; that the photo ID requirement amounts to an additional voting qualification, in violation of article IV, section 1; and, finally, that the Act fails to provide equal protection of the law by requiring photo ID from in-person voters but not absentee voters, in violation of article XI, section 8.  These claims involve issues of constitutional interpretation, which are questions of law that are subject to de novo review without any presumption of correctness given to the legal conclusions of the trial court and Court of Appeals.  Colonial Pipeline, 263 S.W.3d at 836.  In addition, we note that each of the Plaintiffs' constitutional claims relates to the version of the Act that was in effect during the 2012 primary and general elections; thus, while we have considered the 2013 amendments in regard to questions of justiciability, we restrict our constitutional analysis to the version of the Act in effect at the time of the events in this case.

---

[10] In this regard, political subdivisions are distinguishable from private organizations. Private organizations have standing to bring suit based on the rights of their members as long as the members would have standing to sue in their own right, the interests at issue are germane to the purpose of the organization, and neither the claim asserted nor the relief requested requires the participation of individual members.  Darnell, 195 S.W.3d at 626.

[11] Having determined that the City of Memphis lacks standing to challenge the constitutionality of the Act, we will hereinafter refer to the individual Plaintiffs simply as "the Plaintiffs."

## 1. Undue Burden

The Plaintiffs argue that the Act creates an undue burden on their right to vote in violation of article I, section 5 of the Tennessee Constitution, which provides, in its entirety, that "[t]he elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." The right of suffrage is expounded upon in article IV, section 1, which provides in pertinent part as follows:

> Every person, being eighteen years of age, being a citizen of the United States, being a resident of the State for a period of time as prescribed by the General Assembly, and being duly registered in the county of residence for a period of time prior to the day of any election as prescribed by the General Assembly, shall be entitled to vote in all federal, state, and local elections held in the county or district in which such person resides. All such requirements shall be equal and uniform across the state, and there shall be no other qualification attached to the right of suffrage.

> The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.

Before addressing the merits of the Plaintiffs' claims under these provisions, we must first determine the applicable standard of review.

### a. Standard of Review

This Court has not previously addressed the standard of review applicable to claims arising under article I, section 5 of the Tennessee Constitution. The Court of Appeals determined that laws burdening the right to vote "must be subjected to strict scrutiny." Hargett, 2012 WL 5265006, at *5. While the Plaintiffs challenge the Court of Appeals' analysis of their claims, they maintain that strict scrutiny is the proper standard of review. The Defendants agree, conceding that "the Court of Appeals correctly applied the strict scrutiny standard of review." Notably, however, the United States Supreme Court has rejected the notion that strict scrutiny applies to every statute imposing a burden on the right to vote under the United States Constitution. Instead, addressing claims arising under the First and Fourteenth Amendments, the Court has adopted a "more flexible standard," pursuant to which a showing of important governmental regulatory interests may justify lesser restrictions on the right to vote, whereas strict scrutiny is reserved for laws that impose "'severe' restrictions." Burdick v. Takushi, 504 U.S. 428, 434 (1992) (quoting Norman v. Reed, 502 U.S. 279, 289 (1992)); see also Crawford v. Marion Cnty. Election Bd., 553 U.S.

181, 191 (2008) (plurality opinion) (holding that any burden upon the right to vote "must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation'" (quoting Norman, 502 U.S. at 288-89)); Anderson v. Celebrezze, 460 U.S. 780, 789 (1983). Thus, there is a potential question as to whether this Court should adopt a more stringent standard for voting rights challenges under article I, section 5 than is applied under the United States Constitution. While this Court "is always free to expand the minimum level of protection mandated by the [F]ederal [C]onstitution," Burford v. State, 845 S.W.2d 204, 207 (Tenn. 1992), we are reluctant to do so where the parties have not specifically addressed the issue. Accordingly, based on the Defendants' concession, we will assume, rather than decide, that strict scrutiny applies, leaving for a future case the issue of which standard of review to adopt for claims arising under article I, section 5.[12]

To satisfy strict scrutiny, the Defendants must demonstrate that any burden on the right to vote is justified by a compelling state interest. Bemis Pentecostal Church, 731 S.W.2d at 903. The Defendants must further show that the regulation at issue is narrowly tailored to achieve the compelling state interest. Planned Parenthood of Middle Tenn., 38 S.W.3d 1, 11 (Tenn. 2000). A regulation cannot qualify as narrowly tailored if there are alternative means of achieving the state interest that would be less intrusive and comparably effective. See Bemis Pentecostal Church, 731 S.W.2d at 903.

### b. Facial Challenge

The Plaintiffs first assert that pursuant to article I, section 5, the photo ID requirement is facially unconstitutional, meaning "that no set of circumstances exist under which the Act would be valid." Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 525 (Tenn. 1993). The Plaintiffs argue that the Act is unconstitutional on its face because no compelling governmental interest justifies the burden on the right of suffrage that results from the photo ID requirement. The Plaintiffs contend that the state's interest in preventing voter fraud does not rise to the level of a compelling interest absent proof demonstrating both the existence

---

[12] Because we have decided, for the reasons set out below, that the Act withstands strict scrutiny review, it is apparent that the Act would also satisfy the less demanding federal standard. The concurrence suggests that the standard of review for claims under article I, section 5 should be decided now; however, courts routinely assume, rather than decide, that strict scrutiny applies when the parties have not adequately addressed which standard of review should apply and when the level of scrutiny is not determinative as to the issues presented. See, e.g., Alaska Right to Life Comm. v. Miles, 441 F.3d 773, 788 (9th Cir. 2006) (assuming without deciding that strict scrutiny was the applicable standard of review); Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir. 1993) (same); Bowers v. State, 389 A.2d 341, 347 (Md. 1978) (same); City of Milwaukee v. K.F., 426 N.W.2d 329, 339 (Wis. 1988) (same); see also Shaw v. Hunt, 517 U.S. 899, 915 (1996) (assuming without deciding the existence of compelling state interests in conducting strict scrutiny analysis).

of in-person voter fraud in Tennessee and the effectiveness of the photo ID requirement in preventing that type of fraud. While the Defendants dispute the notion that proof of fraud is lacking, their primary contention is that the General Assembly is not required to prove the existence of a problem with voter fraud before enacting legislation to take preventative measures. In defending the constitutionality of the photo ID requirement, the Defendants rely upon the state's "interest in the integrity of the election process, including the prevention of voter fraud."

This Court has previously recognized the compelling nature of the state's interest in the integrity of the election process. In Bemis Pentecostal Church, for example, this Court concluded in the context of a First Amendment challenge that "[t]he authority of the Tennessee Legislature to control the conduct of elections held in this State is manifest." 731 S.W.2d at 901 (citing Trotter v. City of Maryville, 235 S.W.2d 13, 18-19 (Tenn. 1950)). As noted in that case, the same constitutional provisions that guarantee the right to vote also charge the state with ensuring that elections are "free and equal," Tenn. Const. art. I, § 5, and authorize the General Assembly "to enact . . . laws to secure . . . the purity of the ballot box," id. art. IV, § 1. These constitutional provisions underscore the magnitude of the state interest at issue in this appeal. Cf. Bemis Pentecostal Church, 731 S.W.2d at 904 (finding that state constitutional provisions "protecting the integrity and fairness of the political process" served to show the state's compelling interest in campaign finance regulation); Planned Parenthood of Middle Tenn., 38 S.W.3d at 17 (finding compelling state interest in protecting maternal health based on article I, section 1 of the Tennessee Constitution, which charges the state government with the duty to ensure the "peace, safety and happiness" of its citizens). Several decisions by the United States Supreme Court confirm the state's compelling interest in maintaining the integrity of the electoral process. See, e.g., Purcell v. Gonzalez, 549 U.S. 1, 4 (2006) ("A State indisputably has a compelling interest in preserving the integrity of its election process." (quoting Eu v. S.F. Cnty. Democratic Cent. Comm., 489 U.S. 214, 231 (1989))). Recognizing the relationship between the right to vote and the prevention of election fraud, the United States Supreme Court observed in a case arising out of this state that an important component of a state's compelling interest in regulating elections is "ensuring that an individual's right to vote is not undermined by fraud." Burson v. Freeman, 504 U.S. 191, 199 (1992).

While the Plaintiffs concede the state's general interest in the integrity of the election process, they argue that this concept cannot serve as constitutional justification for the photo ID requirement because the Defendants have "failed to demonstrate that in-person voter fraud exists, or ever has existed in this State." To support this contention, the Plaintiffs rely upon Hawk v. Hawk, a family law case in which this Court held that absent a showing of "substantial danger of harm to the child," the state's interest in the best interests of the child was not sufficiently compelling to justify interfering with fundamental "parental privacy

rights" by ordering grandparent visitation over the objection of both parents. 855 S.W.2d 573, 579-80 (Tenn. 1993).

We find this argument unpersuasive. A number of courts, including the United States Supreme Court, have rejected the notion that a state must present evidence that it has been afflicted by voter fraud in order to enact laws pursuant to its authority to protect the integrity of the election process. Munro v. Socialist Workers Party, 479 U.S. 189, 194-95 (1986) ("We have never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access."); see also Burson, 504 U.S. at 208-09 (declining to require evidence of damage to the political system to justify voting regulation under strict scrutiny review). We agree with the principle upon which these decisions are based—that protection of the integrity of the election process empowers the state to enact laws to prevent voter fraud before it occurs, rather than only allowing the state to remedy fraud after it has become a problem. See Munro, 479 U.S. at 195-96 ("Legislatures . . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights."). Moreover, while in-person voter fraud may be rare, see Democratic Nat'l Comm. v. Republican Nat'l Comm., 671 F. Supp. 2d 575, 608 (D.N.J. 2009), aff'd, 673 F.3d 192 (3d Cir. 2012), incidents of voter impersonation have been documented in other parts of the country, see Billups, 554 F.3d at 1353, and it is within the authority of the General Assembly to guard against the risk of such fraud in this state, so long as it does not do so in an impermissibly intrusive fashion.

The holding in Hawk, the decision relied upon by the Plaintiffs, is based upon the principle that, absent a showing of danger or harm to the child, our state constitution does not authorize state interference with parental rights. 855 S.W.2d at 579-80. In the election law context, however, our constitution entrusts the General Assembly with both the duty and the authority to "secure . . . the purity of the ballot box." Tenn. Const. art. IV, § 1. Because of the nature of the state's constitutionally mandated role in the election process, a showing of harm is not a prerequisite to legislative action. We hold, therefore, that as long as the General Assembly does not overstep by infringing on qualified citizens' right of suffrage, it may properly exercise its authority to secure the integrity of the election process by acting prophylactically rather than waiting for harm to occur.

We further find that the means adopted by the state—i.e., the photo ID requirement—is narrowly tailored to achieve the state's interest in the integrity of the election process. As recognized by our Court of Appeals, a photo ID requirement "is a logical method of protecting the integrity of elections by combating in-person voter fraud." Hargett, 2012 WL 5265006, at *10. The use of government-issued photo ID cards to verify

identity is a standard practice in various contexts, see Comm'n on Fed. Election Reform, Building Confidence in U.S. Elections: Report of the Commission on Federal Election Reform § 2.5, at 18 (2005), available at http://www1.american.edu/ia/cfer/report/full_ report.pdf (noting that photo ID verification is a standard requirement for boarding a plane, entering federal buildings, and cashing a check), which further demonstrates that requiring a person to provide government-issued photo ID is a practical, narrowly tailored means for the state to guard against the risk of voter impersonation by ensuring that voters are who they say they are.

While the Plaintiffs do not directly dispute the relationship between the photo ID requirement and the state interest, they do contend that the photo ID requirement would not prevent fraudulent voters from avoiding the photo ID requirement in light of Tennessee Code Annotated section 2-7-112(f), which provides an exemption from the photo ID requirement for voters who are indigent or who object to being photographed on religious grounds upon submission of an affidavit attesting to the voter's identity and the basis for the exemption. This contention misapprehends the nature of our strict scrutiny analysis. The Defendants are not required to show that the photo ID requirement will eradicate voter fraud. Even without an exception for indigent voters and religious objectors, any measure aimed at securing the integrity of the election process will inevitably prove less than perfect. The General Assembly's decision to impose an affidavit requirement instead of a photo ID requirement in the case of voters with exceptional circumstances does not, in our assessment, undermine the conclusion that the photo ID requirement imposed by the Act is narrowly tailored to serve the state's interest in securing the integrity of the election process.

In addition, we conclude that the photo ID requirement is not an impermissibly intrusive method for the state to achieve its interest in preventing voter fraud. Addressing the degree to which the state may burden the citizens' right to vote in furtherance of its authority to regulate elections, this Court noted over a century ago that our "constitution surrounded the right of suffrage with some inconveniences, and authorized the legislature to attach more. In the exercise of its power, the legislature must be reasonable and just; not imposing impossible or oppressive conditions, else its legislation will be void." Cook v. State, 16 S.W. 471, 473 (Tenn. 1891).

In our view, our Court of Appeals properly concluded that the degree of intrusion on the right to vote caused by the photo ID requirement is not constitutionally intolerable. It is undisputed that a significant percentage of qualified Tennessee voters already possessed a valid photo ID card at the time the new requirement took effect. Furthermore, various Tennessee election statutes contain measures that mitigate the impact of the photo ID requirement. For example, registered voters who need a photo ID card to vote are entitled to obtain one for free, Tenn. Code Ann. § 55-50-336(g)(1), and indigent voters may vote

without photo ID by submitting an affidavit attesting to their indigency and identity, id. § 2-7-112(f). Also, citizens who qualify to cast an absentee ballot may do so without complying with the photo ID requirement, which allows many of the potential voters who would otherwise suffer the greatest impact to avoid the requirement altogether, including persons who are sixty years of age or older[13] and persons who cannot appear in person due to hospitalization, illness, or physical disability. See id. § 2-6-201(5)(A)–(B). Finally, by the very terms of the Act, citizens who are not allowed to vote due to inadequate evidence of identification are entitled to cast a provisional ballot, which must be counted as long as the person presents valid evidence of identification within two days of the date of the election. Id. § 2-7-112(e).

Notwithstanding these allowances, the Plaintiffs contend that the photo ID requirement excessively burdens their right to vote because in order to obtain a free photo ID card, a voter must expend the time and money needed to appear at one of the forty-eight "Driver Service Centers" that issue such cards and must provide identification that meets specified criteria, such as a United States passport or birth certificate, both of which entail a fee. See Tenn. Dep't of Safety & Homeland Sec., Voter Photo ID, TN.gov, http://www.tn.gov/safety/photoids.shtml (last visited Sept. 16, 2013). Relying upon Weinschenk v. State, 203 S.W.3d 201, 210-19 (Mo. 2010), the Plaintiffs argue that these collateral burdens are tantamount to an impermissible poll tax. In Weinschenk, the Missouri Supreme Court held unconstitutional a photo ID requirement that was similar in many respects to the one at issue in this appeal. Id. at 221-22. The Missouri law required in-person voters to present an unexpired photo ID issued by the State of Missouri or the federal government. Id. at 205. While the law allowed voters to obtain a "non-driver's license" free of charge, as in Tennessee, voters were required to present "identification such as a United States passport or birth certificate" in order to obtain a "free" license. Id. at 208. Because voters would have to pay a fee to either obtain the requisite photo ID or obtain the documentation necessary to obtain a free photo ID, the Missouri high court concluded that the law amounted to a poll tax that imposed an impermissible burden on the right to vote. Id. at 213-14, 219.

Although similar in many respects, Tennessee's photo ID requirement differs from the Missouri law in an important way. Unlike the Missouri law, which provided no relief for voters lacking the funds needed to obtain a valid photo ID card, see id. at 206, this state's Act contains an exception for any in-person voter who "is indigent and unable to obtain proof of identification without payment of a fee," Tenn. Code Ann. § 2-7-112(f). By its plain language, this provision exempts from the photo ID requirement any voter unable to pay the

---

[13] After July 1, 2017, the age requirement for absentee voting eligibility will increase from sixty to sixty-five. Id. § 2-6-201(5)(A).

fees needed to obtain valid evidence of identification, including any fee associated with the documentation necessary to obtain a "free" photo ID card pursuant to section 55-50-336(g)(1). Because of this provision, we cannot endorse the Plaintiffs' characterization of the photo ID requirement as a poll tax.

As for the remaining burdens alleged by the Plaintiffs, such as the time and expense of making a trip to a Driver Service Center to obtain a photo ID, we hold that the General Assembly's compelling interest in protecting the ballot box against the risk of voter fraud justifies the imposition of such inconveniences. See Tenn. Const. art IV, § 1; Cook, 16 S.W. at 473. Accordingly, we affirm the conclusion of the Court of Appeals that the Plaintiffs are not entitled to relief on their facial claim that the Act unduly burdens the right to vote.

### c. As-Applied Challenge

As an alternative to their facial challenge, the Plaintiffs assert an "as-applied" challenge to the Act, arguing that even if the photo ID requirement is constitutional in general, its application to their particular circumstances creates an impermissible burden on their right to vote. See 16 C.J.S. Constitutional Law § 187, at 274 (2005) ("An 'as applied' challenge to the constitutionality of a statute is evaluated considering how it operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts in other situations." (footnote omitted)).

Initially, we note that the trial court found that the Plaintiffs' complaint failed to assert an as-applied challenge to the constitutionality of the Act, and the Court of Appeals neither acknowledged the Plaintiffs' as-applied challenge nor explicitly found it waived. The Defendants contend that the trial court's conclusion was proper and that the Plaintiffs have thus waived their right to raise an as-applied challenge. See In re Estate of Smallman, 398 S.W.3d at 148 ("An issue not raised at trial may not be raised for the first time on appeal."). We disagree. While the Plaintiffs' complaint is not entirely clear as to the type of constitutional claim they intended to allege, it contains numerous factual allegations regarding the specific circumstances of Ms. Turner-Golden and Ms. Bell. Also, both made claims that their "inability to obtain any of the acceptable forms of [photo ID] without considerable expense or hardship" resulted in an "an undue burden on [their] [c]onstitutional right to vote." Because the Plaintiffs are entitled to a liberal construction of these allegations, see Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011), we find that the complaint sufficiently stated as-applied constitutional claims of undue burden. Because the Plaintiffs adequately presented their as-applied challenges in the trial court, we reject the Defendants' contention that the as-applied challenges have been waived and find it appropriate to address the merits of the Plaintiffs' claims.

-19-

Ms. Turner-Golden contends that the Act is unconstitutional as applied to her because "getting an acceptable photo ID would have required taking hours out of her day, while also balancing her career education program and caring for the two young grandchildren over whom she has custody, one of whom has special needs." She asserts that when she obtained a photo ID card in January of 2012, she made a two-and-a-half-hour trip to a Shelby County Driver Service Center to obtain the photo ID card and made a separate trip to obtain a copy of her birth certificate, for which she paid a fee. She further contends that fifty-three of the ninety-five counties in Tennessee are without an office that issues free photo ID cards. Ms. Turner-Golden concedes, however, that Shelby County, where she resides, has four such offices.

Ms. Bell, also a Shelby County resident, is in her seventies, and, while she no longer drives a car, she has a Tennessee driver's license that does not include her photograph. As in the case of Ms. Turner-Golden, Ms. Bell asserts that significant time and travel would be involved in acquiring identification compliant with the Act. It is undisputed, however, that because of her age, Ms. Bell may vote without photo ID by casting an absentee ballot.

As the Defendants point out, neither Ms. Turner-Golden nor Ms. Bell claim that they lacked the financial means necessary to obtain a photo ID card. Even if they lacked sufficient funds to obtain a photo ID card or the documentation necessary to obtain a free photo ID card, either could avoid the photo ID requirement by invoking the indigency exception of Tennessee Code Annotated section 2-7-112(f). The primary burden upon which they rely, therefore, is the time of travel necessary to make a trip to obtain a photo ID card, a task made more complicated by the demands of education and family, in the case of Ms. Turner-Golden, and by the lack of a means of transportation, in the case of Ms. Bell.

In our view, the Plaintiffs have failed to establish that the burdens of time and travel are sufficient to sustain an as-applied challenge to the constitutionality of the Act. While these difficulties arising from the Plaintiffs' individual circumstances make casting a vote less convenient for them, such inconveniences, without more, are insufficient to elevate the photo ID requirement to the level of an impermissibly burdensome condition on the right to vote. See Cook, 16 S.W. at 473. Thus, the state's compelling interest in the integrity of the election process justifies the application of the photo ID requirement in the circumstances of both of these individuals. See Burson, 504 U.S. at 199; Bemis Pentecostal Church, 731 S.W.2d at 904.

## 2. Additional Qualification

The Plaintiffs next argue that the photo ID requirement constitutes an unlawful qualification on the right to vote. As indicated, article IV, section 1 of the Tennessee Constitution enumerates several voting qualifications: one must be at least eighteen years of

age, a United States citizen, a Tennessee resident for a period of time as prescribed by the General Assembly, and registered to vote in the county of residence for a period of time prescribed by the General Assembly. These qualifications constitute the exclusive criteria for the right to vote: "there shall be no other qualification attached to the right of suffrage." Tenn. Const. art. IV, § 1. Article IV, section 1, however, also explicitly authorizes the General Assembly to enact laws "to secure the freedom of elections and the purity of the ballot box." The Plaintiffs attempt to portray the photo ID requirement as an additional qualification attached to the right of suffrage, whereas the Defendants maintain that the provision is a proper exercise of the General Assembly's constitutional authority.

Initially, the legislative power to secure the purity of the ballot box does not authorize the General Assembly to unduly burden the right of suffrage or to impose qualifications beyond those enumerated in article IV, section 1. See Mills v. Shelby Cnty. Election Comm'n, 218 S.W.3d 33, 41 (Tenn. Ct. App. 2006). The question remains, however, whether the photo ID requirement should be classified as a voting qualification.

Over one hundred years ago, an individual who was charged with casting an illegal vote for having failed to register contended that the statutory registration requirement constituted an improper voting qualification. State v. Weaver, 122 S.W. 465, 465 (Tenn. 1909).[14] This Court ruled that "[r]equiring a party to be registered is not in any true sense imposing an additional qualification," but is instead "simply [a] matter[] of proof, [a] step[] to be taken in order to ascertain who are and who are not entitled to vote." Id. at 466. More recently, this Court upheld the constitutionality of a statute requiring voters to be registered to vote in a municipal bond election, concluding that the "registration law 'merely serve[d] to identify them as a person qualified to vote' and the law '[wa]s merely a mode of ascertaining and determining whether or not a [person] possesse[d] the necessary qualifications of a voter.'" Trotter, 235 S.W.2d at 18-19 (quoting Weaver, 122 S.W. at 466).

Courts from other jurisdictions have specifically refused to classify photo ID requirements as an additional voting qualification. The Indiana Supreme Court, for example, concluded that a statutory photo ID requirement did not run afoul of a state constitutional requirement prohibiting the addition of voting qualifications. League of Women Voters of Ind., Inc. v. Rokita, 929 N.E.2d 758, 767 (Ind. 2010). The Indiana court explained that the

> requirement that an in-person voter present a government-issued [photo ID] card . . . is merely regulatory in nature. The voter qualifications established in [the state constitution] relate to citizenship, age, and residency. Requiring

---

[14] At the time Weaver was decided, registration was not one of the constitutionally enumerated voting qualifications. Id.

qualified voters to present a specified form of identification . . . functions merely as an election regulation to verify the voter's identity.

Id. The Georgia Supreme Court recently rejected a claim virtually identical to the circumstances here, holding that the state's photo ID requirement did not violate the state constitutional prohibition against additional voting qualifications because it fell within the legislature's "wide 'latitude in determining how the qualifications required by the [c]onstitution may be determined.'" Democratic Party of Ga., Inc. v. Perdue, 707 S.E.2d 67, 72 (Ga. 2011) (quoting Franklin v. Harper, 55 S.E.2d 221, 229 (Ga. 1949)).

Based upon the holdings of this Court and other jurisdictions, we conclude that the photo ID requirement imposed by the Act cannot be fairly characterized as an additional voting qualification. Instead, the photo ID requirement is more properly classified as a regulation pertaining to an existing voting qualification. As with the registration requirements at issue in Weaver and Trotter, the photo ID requirement is "merely a mode of ascertaining . . . whether or not a [person] possesses the necessary qualifications of a voter." Trotter, 235 S.W.2d at 19 (quoting Weaver, 122 S.W. at 466) (internal quotation marks omitted). The Plaintiffs, therefore, are not entitled to relief on their claim that the photo ID requirement amounts to an impermissible additional qualification to those listed in our state constitution.

### 3. Equal Protection

The Plaintiffs' final contention is that the Act violates their right to equal protection under article XI, section 8 of the Tennessee Constitution because it requires a photo ID for in-person voting but not for absentee voting. Article XI, section 8, commonly known as the class legislation clause, provides that

[t]he Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie[s] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

This Court has consistently held that the class legislation clause confers upon individuals the same protections as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Lynch v. City of Jellico, 205 S.W.3d 384, 395 (Tenn. 2006); Davis, 54 S.W.3d at 276. Article XI, section 8, like the Equal Protection Clause of the Fourteenth Amendment, "demand[s] that persons similarly situated be treated alike." Lanier v. Rains,

-22-

229 S.W.3d 656, 666 (Tenn. 2007); see also Doe v. Norris, 751 S.W.2d 834, 841 (Tenn. 1988) ("The concept of equal protection espoused by the federal and our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.'" (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920))).

The threshold inquiry is whether the classes of persons at issue are similarly situated; if not, then there is no basis for finding a violation of the right to equal protection. Posey v. City of Memphis, 164 S.W.3d 575, 579 (Tenn. Ct. App. 2004) ("[I]f two classes are being treated differently, the equal protection clause has no application unless the classes are similarly situated within the meaning of the equal protection clause."). In evaluating whether two classes are similarly situated, courts focus on "relevant similarit[ies]" between the groups but "should 'not demand exact correlation.'" Loesel v. City of Frankenmuth, 692 F.3d 452, 462 (6th Cir. 2012) (quoting Bench Billboard v. City of Cincinnati, 675 F.3d 974, 987 (6th Cir. 2012)).

In this instance, the Court of Appeals held that the classes at issue—in-person voters and absentee voters—are not similarly situated. We agree. The Plaintiffs rely primarily upon two cases in their equal protection argument: Hilliard v. Park, 370 S.W.2d 829 (Tenn. 1963), overruled in part by Southall v. Billings, 375 S.W.2d 844, 852 (Tenn. 1963), and Emery v. Robertson County Election Commission, 586 S.W.2d 103 (Tenn. 1979). In our view, neither of these rulings establishes the requisite similarity between in-person and absentee voters. In Hilliard, for example, this Court ruled that numerous absentee ballots were invalid because the voters, despite being qualified citizens, had failed to strictly comply with the statutory requirements for absentee voting. 370 S.W.2d at 837. The Court distinguished in-person voters, whose ballots should be upheld as long as they substantially comply with the elections laws, from absentee voters, who must strictly comply with statutory requirements. Id. at 833. The Court observed that absentee voting is a "special privilege" and "a departure from the general rule governing the method of exercising the right to vote" that "requires a stricter adherence to the legislative conditions imposed upon its exercise." Id. (quoting Miller v. Mersch, 42 N.W.2d 652, 653 (Neb. 1950)). In Emery, this Court again invalidated several absentee votes based upon the same distinction, describing absentee voters as fundamentally different from in-person voters and requiring strict compliance with election procedures. 586 S.W.2d at 108-10.

The practical differences between in-person and absentee voters with respect to identity verification further serve to demonstrate their lack of similarity. See Loesel, 692 F.3d at 462-63 (holding that the degree to which classes are similarly situated depends upon the context of the case). The Act aims to prevent in-person voter fraud by having election officials compare voters with their photographic representations on government-issued photo ID cards. As our Court of Appeals observed, using the same method to verify the identity

of absentee voters would not be feasible, as their absence forecloses the possibility of photographic comparison at the time the ballot is cast. <u>Hargett</u>, 2012 WL 5265006, at *11. In order to avoid potential fraud in an absentee ballot, voters must strictly comply with an entirely different set of procedural safeguards, which include providing a signature to be compared with the voter's signature in the registration record, <u>see</u> Tenn. Code Ann. § 2-6-202(d)(1), (g), and signing an affidavit under penalty of perjury attesting that all information on the ballot application is correct and that the affiant meets all the necessary voting qualifications, <u>see</u> <u>id.</u> § 2-6-202(e).

There are essential differences between in-person and absentee voters. The Plaintiffs, therefore, have failed to establish that these two classes of voters are so similarly situated that they are entitled to equal protection of the law with respect to the issue of identity verification.

### III. Conclusion

In summary, the 2013 amendments to the Act rendered moot all issues pertaining to the validity of the photo ID cards issued by the Library. As for the remaining claims, the individual Plaintiffs, but not the City of Memphis, have demonstrated standing to challenge the constitutionality of the Act. Although the Plaintiffs' constitutional claims qualify as justiciable, we find no basis for invalidating the Act on constitutional grounds. The judgment of the Court of Appeals is, therefore, affirmed. Costs are taxed to the City of Memphis, Daphne Turner-Golden, and Sullistine Bell, for which execution may issue if necessary.

_____
GARY R. WADE, CHIEF JUSTICE