IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2025 Session

## THOMAS WEST v. DAVID GERREGANO, TENNESSEE COMMISSIONER OF REVENUE

Appeal from the Chancery Court for Davidson County
No. 23-0776-III    I'Ashea L. Myles, Chancellor
_____

### No. M2025-00165-COA-R3-CV
_____

Appellant, an attorney residing in Kansas but licensed in both Kansas and Tennessee, filed a complaint challenging the constitutionality of Tennessee's professional privilege tax. A three-judge panel granted summary judgment in favor of the defendant commissioner of revenue, ruling that the tax did not violate the dormant Commerce Clause. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Thomas H. West, Overland Park, Kansas, Pro se.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Laurel K. Hall, Assistant Attorney General, for the appellee, David Gerregano, Commissioner of the Tennessee Department of Revenue.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2023, Petitioner/Appellant Thomas West ("Appellant"), filed a complaint for declaratory judgment challenging the constitutionality of Tennessee's

professional privilege tax, Tennessee Code Annotated sections 67-4-1701 through -1712, in the Sumner County Chancery Court. The complaint was amended on several occasions and ultimately transferred to the Davidson County Chancery Court ("the trial court"). The operative complaint was filed against Defendant/Appellee David Gerregano ("Appellee"), the Tennessee Commissioner of Revenue.[1] Therein, Appellant, an attorney that resides in Kansas but also holds a Tennessee license, argued that the professional privilege tax violated the dormant Commerce Clause of the United States Constitution, either "facially [] or at least as applied to the five remaining professions still subject to it."[2] Appellant therefore asked that the tax be declared invalid and Appellee be barred from enforcing it against "any professionals." A three-judge panel was appointed to decide Appellant's constitutional challenge with the Honorable I'Ashea L. Myles, J Brent Bradberry, and Beth Boniface presiding. *See* Tenn. Code Ann. § 20-18-101(a)(1)(A).

Appellant and Appellee filed cross-motions for summary judgment. The parties did not dispute that Appellant is an attorney licensed in good standing in Tennessee, who has been subject to and paid the professional privilege tax, despite residing out of state. The trial court eventually issued a unanimous order in favor of Appellee on February 4, 2025, ruling that the professional privilege tax did not violate the dormant Commerce Clause under the four-part test set forth in ***Complete Auto Transit, Inc. v. Brady***, 430 U.S. 274, 278, 97 S. Ct. 1076, 1078, 51 L. Ed. 2d 326 (1977), as applied to attorneys practicing in Tennessee. In particular, the trial court concluded that the tax did not discriminate against interstate commerce, did not fail the test of internal consistency, and was fairly apportioned even for those attorneys that reside outside Tennessee. The trial court further ruled that Appellant's facial challenge to the tax as to other non-attorney professionals was pretermitted by its ruling that the tax was constitutional as applied to attorneys. From this order, Appellant now appeals to this Court.

## II. ISSUES PRESENTED

Appellant raises three issues, which are taken from his brief:

1. Whether the trial court erred in finding the professional privilege tax does not discriminate against interstate commerce.
2. Whether the trial court erred in finding the professional privilege tax passes the test of internal consistency.
3. Whether the trial court erred in finding the professional privilege tax to be fairly apportioned.

---

[1] In an earlier filing, Appellant asserted that this final amended complaint would raise claims against Appellee in both his individual and official capacities. The resulting complaint cited only Appellee's individual capacity. The Office of the Tennessee Attorney General has at all times defended Appellee in this action.

[2] The complaint also alleged claims under the Equal Protection Clause and article II, section 28 of the Tennessee Constitution. These claims were eventually dismissed, and the trial court's rulings on those claims are not challenged on appeal.

## III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015) (citing ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997); ***Abshure v. Methodist Healthcare-Memphis Hosp.***, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." ***Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by **Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1 (Tenn. 2008), *holding modified by **Rye***, 477 S.W.3d 235.

## IV. ANALYSIS

Beginning in 1992, Tennessee law declared that "engaging in any vocation, profession, business or occupation named in this part is declared to be a privilege taxable by the state alone." Tenn. Code Ann. § 67-4-1701. The State therefore currently imposes a $400.00 tax that is due annually on June 1, and collected by the Commissioner of Revenue. Tenn. Code Ann. § 67-4-1701 & -1703. The tax is "deposited into the state general fund[.]" Tenn. Code Ann. § 67-4-1701. Since 2022, only five professions are subject to the tax:

(1) Persons registered as lobbyists pursuant to § 3-6-302;
(2) Persons licensed or registered under title 48, chapter 1 as:
    (A) Agents;
    (B) Broker-dealers; and
    (C) Investment advisers; and
(3) Persons licensed as attorneys by the supreme court of Tennessee.

Tenn. Code Ann. § 67-4-1702 (2023).[3] As is evident from the above, the tax applies to persons who are licensed or registered to practice one of the listed professions, regardless of the residence of the person.[4] With regard to the legal profession in particular, there is no dispute that the Tennessee Supreme Court has the power to suspend attorneys who do not pay the professional privilege tax.

In this appeal, Appellant opposes the trial court's grant of summary judgment as to both his facial and as-applied challenges to Tennessee's professional privilege tax under

---

[3] The statute originally included over twenty professions, including licensed or registered accountants, engineers, and medical professionals. *See* 1992 Tenn. Laws Pub. Ch. 529 (S.B. 777).

[4] Yet, attorneys need not be licensed in Tennessee to practice law here on a case-by-case basis. Rather, the Tennessee Supreme Court has adopted a procedure wherein out-of-state attorneys may be admitted on a temporary basis to practice in Tennessee, referred to as admission pro hac vice. *See generally* Tenn. Sup. Ct. R. 19. Attorneys admitted pro hac vice are required to pay a yearly registration fee to the Tennessee Board of Professional Responsibility, but there has been no proof presented in this case that they are subject to the professional privilege tax. *See generally Pro Hac Vice -- Frequently Asked Questions*, Board of Professional Responsibility of the Supreme Court of Tennessee, https://www.tbpr.org/for-legal-professionals/pro-hac-vice-faq (last visited Dec. 8, 2025).

the dormant Commerce Clause. Appellee asserts, however, that Appellant's challenge is facial only.

When a facial challenge to the constitutionality of a statute is raised, "the plaintiff contends that there are no circumstances under which the statute, as written, may be found valid." *Fisher v. Hargett*, 604 S.W.3d 381, 396–97 (Tenn. 2020) (citing *City of Memphis v. Hargett*, 414 S.W.3d 88, 103 (Tenn. 2013)). "In contrast, in an as-applied challenge, the plaintiff contends that the statute is unconstitutional as construed and applied in actual practice against the plaintiff under the facts and circumstances of the particular case, not under some set of hypothetical circumstances." *Id.* at 397 (citing *City of Memphis*, 414 S.W.3d at 107). In some cases, the distinction between an as-applied challenge and a facial challenge is murky:

> [T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. In fact, a claim can have characteristics of as-applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications.

*Id.* (internal quotation marks omitted) (quoting *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691–92 (6th Cir. 2015) (citations omitted)).

The Tennessee Supreme Court has explained "the general burden faced by a plaintiff mounting a constitutional challenge to a statute" as follows:

> "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." "[I]n reviewing [a] statute for a possible constitutional infirmity, we are required to indulge every presumption and resolve every doubt in favor of the constitutionality of the statute."

> "The Court must uphold the constitutionality of a statute wherever possible[.]" "[T]he Court must be controlled by the fact that our Legislature may enact any law which our Constitution does not prohibit, and the Courts of this State cannot strike down one of its statutes unless it clearly appears that such statute does contravene some provision of the Constitution."

*Id.* (quoting *Willeford v. Klepper*, 597 S.W.3d 454, 465 (Tenn. 2020) (citations omitted)). But the "burden is even greater when the challenge is facial." *Id.* at 397–98 (citation omitted). Indeed, the Tennessee Supreme Court noted that "[a] facial challenge to a statute is the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid. Plaintiffs asserting a facial challenge, therefore, undertake an especially heavy legal burden." *Id.* at 398 (internal quotation marks and citations omitted).

At oral argument, Appellant appeared to agree that the professional privilege tax is constitutional with regard to Tennessee-resident professionals and equivocated as to whether the tax was constitutional as to professionals who live outside of Tennessee but practice their profession only within Tennessee's borders. Thus, he appeared to confine his argument to only those out-of-state professionals who have limited practices in Tennessee.[5] Regardless of how the claim is framed by a plaintiff, however, the Tennessee Supreme Court has held that "[t]o the extent that the plaintiffs' claims extend beyond their circumstances, they must satisfy the standards for a facial challenge." *Id.* (citing *Green Party of Tenn.*, 791 F.3d at 692). So in as much as Appellant is challenging the applicability of the professional privilege tax to those other than himself, he undertakes a significant burden.

The United States Constitution vests the power "to regulate Commerce . . . among the several States" with Congress. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368, 143 S. Ct. 1142, 1152, 215 L. Ed. 2d 336 (2023) (quoting U.S. Constitution, art. I, § 8, cl. 3). Under what has come to be called the dormant Commerce Clause, the United States Supreme Court has held that "state laws offend the Commerce Clause when they seek to 'build up . . . domestic commerce' through 'burdens upon the industry and business of other States,' regardless of whether Congress has spoken." *Id.* at 369 (quoting *Guy v. Baltimore*, 100 U.S. 434, 443, 25 L. Ed. 743 (1880)). In modern times, the Supreme Court has explained that the dormant Commerce Clause "prohibits the enforcement of state laws 'driven by . . . "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."'" *Id.* (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38, 128 S. Ct. 1801, 170 L. Ed. 2d 685 (2008)).

When a challenge is made to a state taxing statute under the dormant Commerce Clause, courts evaluate its constitutionality pursuant to the four-part test set forth in *Complete Auto Transit, Inc. v. Brady*. *See, e.g.*, *Amerada Hess Corp. v. Dir., Div. of Tax'n, N.J. Dep't of Treasury*, 490 U.S. 66, 72, 109 S. Ct. 1617, 1621, 104 L. Ed. 2d 58 (1989) (applying the four-part test). This test considers the following: (1) whether "the tax is applied to an activity with a substantial nexus with the taxing State"; (2) whether the tax "is fairly apportioned"; (3) whether the tax "does not discriminate against interstate commerce"; and (4) whether the tax "is fairly related to the services provided by the State[.]" *Complete Auto Transit*, 430 U.S. at 279. Appellant challenges only the second

---

[5] In support of his claims, he submitted the affidavits of multiple attorneys who reside outside of Tennessee, have limited practices in Tennessee, and are required to pay the professional privilege tax to maintain an active license in Tennessee. These affidavits generally indicated that the tax was a deterrent on their continued practice of law in Tennessee. Appellant's own affidavit stated that he took inactive status to avoid the burden of the professional privilege tax but only reactivated his license in order to file pleadings in this case. Appellant's affidavit did not include information concerning his case load in Tennessee prior to his period of inactivity. Moreover, while Appellant claimed to have challenged all professionals covered by the professional privilege tax, his arguments have been confined almost solely to the effect on attorneys, as discussed in more detail *infra*.

and third prongs of the ***Complete Auto Transit*** test. Like the parties, we begin with the question of whether the tax discriminates against interstate commerce.

### A. Does the Professional Privilege Tax Discriminate Against Interstate Commerce?

As the United States Court of Appeals for the Sixth Circuit has explained,

A state regulation can discriminate against out-of-state interests in three different ways: (a) facially, (b) purposefully, or (c) in practical effect. The critical consideration is the overall effect of the statute on both local and interstate activity. The plaintiff bears the initial burden of proof to show that the state regulation is discriminatory.

***Am. Beverage Ass'n v. Snyder***, 735 F.3d 362, 370 (6th Cir. 2013) (internal quotation marks, citations, and brackets omitted). Here, Appellant asserts that the professional privilege tax has the practical effect of discriminating against out-of-state lawyers because it is a flat tax that does not take into account the amount of cases an out-of-state attorney may have in Tennessee compared to a Tennessee-resident attorney.[6] In support of his argument that the nature of the professional privilege tax as a "flat tax" is unconstitutional, Appellant cites ***American Trucking Associations, Inc. v. Scheiner***, 483 U.S. 266, 107 S. Ct. 2829, 97 L. Ed. 2d 226 (1987). In contrast, Appellee contends that this case is governed by ***American Trucking Associations, Inc. v. Michigan Public Service Commission***, 545 U.S. 429, 125 S. Ct. 2419, 162 L. Ed. 2d 407 (2005), and like the tax in that case, the Tennessee professional privilege tax does not discriminate against interstate commerce. We will therefore consider each of these cases in turn.

In ***Scheiner***, the State of Pennsylvania imposed registration fees, fuel taxes, and two "flat taxes"—a marker fee that existed from 1980 to 1982 and an axle tax enacted in 1982— to support road maintenance expenditures. 483 U.S. at 271. These taxes required vehicles that used Pennsylvania's roads to pay a flat amount, irrespective of the miles traveled on Pennsylvania's roads or the fact that the vehicle was registered in another state. ***Id.*** at 274–

---

[6] In the trial court, Appellant also raised purposeful discrimination, citing legislative history surrounding the enactment of the professional privilege tax and a 2016 report from Tennessee Advisory Commission on Intergovernmental Relations acknowledging that most of the burden of the tax falls on out-of-state professionals. The trial court held that Appellant failed to prove purposeful discrimination. But Appellant's initial brief does not contain any argument that the professional privilege tax is purposefully discriminatory. Rather, the cases cited and analysis focus solely on whether the tax is discriminatory in practical effect. In his reply brief, Appellant does respond to a statement in Appellee's brief about the Tennessee General Assembly's lack of "effort" to tax activity outside of the State as follows: "It would be purposeful discrimination." Appellant does not elaborate on this statement or provide any argument in support of a claim of purposeful discrimination. Moreover, Appellant goes on to state that "the principal assertion is that the professional privilege tax discriminates in practical effect, not by purposeful discrimination." Thus, it is somewhat unclear whether Appellant was attempting to raise purposeful discrimination in his reply brief. In any event, not only are reply briefs not the vehicle for raising new arguments, but arguments may be waived when no more than skeletally briefed. *See **Denver Area Meat Cutters & Emps. Pension Plan v. Clayton***, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006); ***Sneed v. Bd. of Pro. Resp. of Sup. Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010).

75. The plaintiffs, "a class of interstate motor carriers whose vehicles [were] registered outside of Pennsylvania[,]" challenged the constitutionality of the flat taxes under the dormant Commerce Clause. *Id.* at 275. In particular, the plaintiffs argued that the entire burden of the taxes fell on out-of-state vehicles because the marker fee was made part of the registration fee paid by in-state vehicles, and the later axle tax was offset for in-state vehicles by a statutory reduction in registration fees. *Id.* at 275–76. In the alternative, the plaintiffs asserted that the axle tax was an invalid flat tax that was unrelated to the benefits received by interstate motor carriers. *Id.* at 276. The Pennsylvania Supreme Court ruled that the taxes were not discriminatory, instead concluding that the taxes applied equally to all vehicles using the state's highways. *Id.* at 279.

The question presented to the United States Supreme Court in **Scheiner** was "whether Pennsylvania's flat taxes result in a blanket discrimination against interstate commerce." *Id.* at 281. As the Court explained, while in-state vehicles had the consolation of an ultimate reduction in their registration fees, some out-of-state vehicles were required to pay both the Pennsylvania flat tax and their home-state registration fee. The Court found that the central dispute was therefore "more subtle," involving whether this taxation scheme imposed a heavier tax burden on out-of-state businesses than it imposed on in-state residents. The Court answered that question in the affirmative, explaining that "[t]he way in which a tax levied on participants in interstate commerce is measured and assessed bears directly on whether it implicates central Commerce Clause values." *Id.* at 282. Because the Pennsylvania flat tax scheme was "not treating the two types of vehicles with an even hand," it was discriminatory. *Id.*

In reaching this result, the Court appeared to take issue specifically with the imposition of flat taxes, at least as applied to commercial carriers. As the Court explained:

> So long as a State bases its tax on a relevant measure of actual road use, obviously both interstate and intrastate carriers pay according to the facilities in fact provided by the State. But a tax levied for the privilege of using roads, and not their actual use, may, in the normal course of operations and not as a fanciful hypothesis, involve an undue burden on interstate carriers. While the privilege extended by a State is unlimited in form, and thus theoretically the same for all vehicles, whether interstate or intrastate, the intrastate vehicle can and will exercise the privilege whenever it is in operation, while the interstate vehicle must necessarily forego the privilege some of the time simply because of its interstate character, *i.e.,* because it operates in other States as well. In the general average of instances, the privilege is not as valuable to the interstate as to the intrastate carrier.

*Id.* at 291 (quoting *Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 557, 70 S. Ct. 806, 814, 94 L. Ed. 1053 (1950) (Frankfurter, J., dissenting)). Appellant cites this language in particular to assert that the flat tax in this case is likewise invalid because, for example, an out-of-state lawyer who has very few cases in Tennessee exercises his or her professional privilege less than an in-state attorney who practices only in Tennessee. Appellant posits a

hypothetical comparing a Tennessee-resident attorney who takes on four hundred cases in Tennessee per year to a non-Tennessee-resident attorney who takes on only two cases in Tennessee per year. Under this scenario, Appellant contends, the Tennessee resident is taxed at a rate of $1.00 per case, while the non-resident is taxed at a rate of $200.00 per case. So Appellant asserts that the burden of the professional privilege tax falls disproportionately on non-residents.[7]

Appellee points out, however, that flat taxes are not per se in violation of the dormant Commerce Clause. Indeed, nearly twenty years after *Scheiner*, the United States Supreme Court upheld the imposition of a flat tax on a commercial carrier in *American Trucking Associations, Inc. v. Michigan Public Service Commission*. *See* 545 U.S. at 437. In that case, Michigan imposed a $100.00 flat tax on trucks engaged in intrastate commercial hauling. Specifically, the Michigan tax applied to "trucks that undertake point-to-point hauls between Michigan cities." *Id.* at 431. A trucking company that engaged in both interstate and intrastate hauling sought to invalidate the law on the basis "that trucks that carry *both* interstate *and* intrastate loads engage in intrastate business less than trucks that confine their operations to the Great Lakes State" and that the law therefore discriminated against interstate carriers in violation of the dormant Commerce Clause. *Id.* at 432. The Michigan state courts upheld the tax. *Id.*

The United States Supreme Court agreed, finding that nothing in the challenged law offended the Commerce Clause. *Id.* at 434. As an initial matter, the Court noted that the tax was imposed "only upon intrastate transactions—that is, upon activities taking place exclusively within the State's borders." *Id.* Rather, the Court found that the tax

> applies evenhandedly to all carriers that make domestic journeys. It does not reflect an effort to tax activity that takes place, in whole or in part, outside the State. Nothing in our case law suggests that such a neutral, locally focused fee or tax is inconsistent with the dormant Commerce Clause.

*Id.* The Court went on to explain that States impose various flat fees on local businesses and services providers, which while not entirely immune from Commerce Clause scrutiny, are permitted in order "to shelter [the States'] people from menaces to their health or safety," or to support the "States' power to lay taxes for the support of state government[.]" *Id.* (citations omitted). The Court further noted that the record contained little evidence of any significant burden on interstate trade or that the tax unfairly discriminated against interstate truckers. *Id.* at 434–35.

---

[7] In the trial court, Appellant submitted the following as an undisputed material fact: "Approximately 87% of taxpayers who must pay the professional privilege tax live outside of Tennessee." The State offered various objections to this statement but agreed that "the statement is an approximate percentage of all professional privilege tax taxpayers for all covered professions who reside outside of Tennessee." The State noted in its own statement of undisputed material facts, however, and Appellant agreed, that it was reported in the fiscal year 2014–2015 that 82% of the attorneys who paid the privilege tax in that year were Tennessee residents.

In reaching this result, the Court also specifically considered *Scheiner*, which the plaintiffs asserted required invalidation of the flat tax. *Id.* at 436. But the Court explained that the tax at issue taxed purely local activity: "it does not tax an interstate truck's entry into the State nor does it tax transactions spanning multiple States." *Id.* at 437. There was no "convincing evidence showing that the tax deters, or for that matter discriminates against, interstate activities" or that the tax assessment should be "measured per mile rather than per truck." *Id.* The Court therefore held that *Scheiner* did not require invalidation of Michigan's flat tax.

Appellant contends, however, that *Michigan Public Service Commission* is inapposite because the Supreme Court held that the tax at issue did "not tax an interstate truck's *entry* into the State[.]" *Id.* (emphasis added). In contrast, the trial court ruled that the professional privilege tax here does in fact "operate[] as an entry fee[.]" So then, Appellant argues that the professional privilege tax falls squarely into the type of flat tax that was invalidated in *Scheiner*.

In our view, Appellant's argument misses the mark. Certainly, the Supreme Court in *Michigan Public Service Commission* noted that the flat tax at issue did not tax a truck's entry into Michigan; but the Court went on to note, in the same breath, that the tax also did not "tax transactions spanning multiple States." *Id.* And in this case, the trial court's characterization of the privilege tax as an entry fee was clarified by its statement that the fee is "an amount that must be paid on the front end for the privilege of practicing law in Tennessee[,]" i.e., a permissible "local fee[]" under *Michigan Public Service Commission*. *Id.* at 438.

We agree with the trial court's ultimate conclusion. Like other courts to consider this issue, we conclude that the distinction between the permissible flat tax under *Michigan Public Service Commission* and an impermissible flat tax under *Scheiner* is whether the tax is imposed evenly on "all [businesses] for the privilege of doing business locally[.]" *Ventas Fin. I, LLC v. Franchise Tax Bd.*, 165 Cal. App. 4th 1207, 1220, 81 Cal. Rptr. 3d 823, 833 (2008). In other words, if the flat tax is on local business transacted solely *within* the state, not merely the act of "passing through [the state's] jurisdiction[,]" then the dormant Commerce Clause does not necessarily invalidate the tax. *Am. Bus Ass'n, Inc. v. D.C.*, 2 A.3d 203, 216 (D.C. 2010) (quoting *Am. Trucking Ass'ns v. Secretary of Admin.*, 415 Mass. 337, 613 N.E.2d 95, 101 (1993)).

Despite the imprecise language used by the trial court, this case clearly involves the former. Importantly, it is not "entry" into Tennessee that is taxed by the professional privilege tax but the privilege of practicing a particular profession within Tennessee's borders, regardless of the fact that the professional may also ply his or her trade in an additional state. And the United States Supreme Court has made clear that even "interstate firm[s] with local outlets [should] normally expect[] to pay local fees that are uniformly assessed upon all those who engage in local business, interstate and domestic firms alike." *Mich. Pub. Serv. Comm'n*, 545 U.S. at 438. Indeed, the Court has declared that "[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce

from their just share of state tax burden[.]" ***Complete Auto Transit***, 430 U.S. at 288 (quoting ***W. Live Stock v. Bureau of Revenue***, 303 U.S. 250, 254, 58 S. Ct. 546, 548, 82 L. Ed. 823 (1938)) (rejecting the rule "that a state tax on the 'privilege of doing business' is per se unconstitutional when it is applied to interstate commerce"). And this rule applies even if the tax "increases the cost of doing business" for an interstate firm over a firm that operates in only a single state. ***Mich. Pub. Serv. Comm'n***, 545 U.S. at 438 (quoting ***Commonwealth Edison Co. v. Montana***, 453 U.S. 609, 646, 101 S. Ct. 2946, 2968, 69 L. Ed. 2d 884 (1981) (Blackmun, J., dissenting)) (quoting ***Complete Auto Transit***, 430 U.S. at 279). As a result, we conclude that Tennessee's professional privilege tax is not discriminatory in practical effect.

## B. Is the Professional Privilege Tax Internally Consistent?

Appellant next contends that Tennessee's professional privilege tax fails the test of internal consistency.[8] It is true that the United States Supreme Court has held that courts should consider internal consistency—that is, the requirement that "a state tax must be of a kind that, 'if applied by every jurisdiction, there would be no impermissible interference with free trade.'" ***Scheiner***, 483 U.S. at 284 (quoting ***Armco Inc. v. Hardesty***, 467 U.S. 638, 644, 104 S. Ct. 2620, 2623, 81 L. Ed. 2d 540 (1984)). In other words, "[i]nternal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." ***Okla. Tax Comm'n v. Jefferson Lines, Inc.***, 514 U.S. 175, 185, 115 S. Ct. 1331, 1338, 131 L. Ed. 2d 261 (1995). Failing the test "shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." ***Id.*** In ***Scheiner***, the Court concluded that the flat taxes failed this test because if other states imposed similar flat taxes "for the privilege of making commercial entrances into its territory, there is no conceivable doubt that commerce among the States would be deterred." 483 U.S. at 284. Appellant argues, in a somewhat conclusory fashion, that because the trial court found that the professional privilege tax is also an "entry fee" into commerce in this state, it likewise fails the internal consistency test.

Appellee disagrees, noting that the United States Supreme Court rejected a similar argument in ***Michigan Public Service Commission*** on the basis that the fee applied only to local business. *See* 545 U.S. at 438 (holding that an interstate truck in this scenario "would have to [pay a tax in multiple states] only because it engages in *local* business in all those States"); *see also* ***Ventas Fin. I***, 81 Cal. Rptr. 3d at 833–34 (holding that "the court in ***American Trucking*** did not *reject* the internal consistency requirement altogether[,]" but rather found no Commerce Clause violation "notwithstanding the

---

[8] Appellee points out that this test is part of the second prong of the ***Complete Auto Transit*** test— that is, whether the tax is fairly apportioned. We address Appellant's issues in the order that he has chosen to raise them.

absence of internal consistency, because the petitioners would incur intrastate (*local*) fees in multiple states only by engaging in local business in those states").

The United States Supreme Court case of ***Oklahoma Tax Commission v. Jefferson Lines, Inc.***, 514 U.S. 175, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995), is helpful to this analysis. In that case, a common carrier providing bus services sought to invalidate Oklahoma's imposition of sales tax on the in-state purchase of bus tickets for interstate travel. *Id.* at 178. Relevant to this appeal, the bus line argued that the "tax also presents the danger of multiple taxation . . . because any other State through which a bus travels while providing the services sold in Oklahoma will be able to impose taxes of their own upon [the carrier] or its passengers for use of the roads." *Id.* But the Court held that the tax scheme did not fail the internal inconsistency test because even "[i]f every State were to impose a tax identical to Oklahoma's, that is, a tax on ticket sales within the State for travel originating there, no sale would be subject to more than one State's tax." *Id.* at 185.

The same is true here. As noted above, Tennessee's professional privilege tax applies to only those specified professionals who are licensed or registered in Tennessee. The fact that these professionals may reside outside Tennessee simply does not transform purely local business into interstate commerce. Even if every State imposed a similar tax, the choice to practice law in a particular state would only be subject to one privilege tax. In other words, law or other professions practiced in Tennessee are only taxed by Tennessee, while other states are free to tax the practice of law or other professions within their own borders. And ***Michigan Public Service Commission*** makes clear that the fact that Tennessee has chosen to impose this tax as a flat fee for the privilege of practicing certain professions does not create an internal inconsistency that removes the State's power to impose such a tax. As such, the test of internal consistency is not a barrier to imposition of the professional privilege tax.

### C. Is the Professional Privilege Tax Fairly Apportioned?

Finally, Appellant asserts that Tennessee's professional privilege tax is not "fairly apportioned." ***Complete Auto Transit***, 430 U.S. at 279. "In the realm of taxation, the requirement of apportionment plays a similar role [as the non-discriminatory requirement] by assuring that interstate activities are not unjustly burdened by multistate taxation." ***Gen. Motors Corp. v. Tracy***, 519 U.S. 278, 299 n.12, 117 S. Ct. 811, 824, 136 L. Ed. 2d 761 (1997). As we perceive it, Appellant essentially argues that the professional privilege tax is not only unfairly apportioned, but in fact not apportioned at all because it is a flat fee, citing ***Scheiner***. *See* 483 U.S. at 292 (stating that "a State's imposition of an unapportioned flat tax . . . discriminates against interstate commerce").

Appellee asserts that while the professional privilege tax may be flat, that does not necessarily mean that it is unapportioned or unfairly apportioned. As Appellee points out, even the ***Scheiner*** Court held that flat taxes may be appropriate when administrative difficulties prevent States from employing more precise methods of tax collection. As the United States Supreme Court explained,

> [T]he Commerce Clause does not require the States to avoid flat taxes when they are the only practicable means of collecting revenues from users and the use of a more finely gradated user-fee schedule would pose genuine administrative burdens. . . . [F]lat taxes may be perfectly valid when administrative difficulties make collection of more finely calibrated user charges impracticable[.]

*Scheiner*, 483 U.S. at 296–97. And the Court in ***Michigan Public Service Commission*** upheld the flat tax at issue in that case, citing the tax's local focus and noting that because the costs of trucking activities vary, "a per-truck, rather than a per-mile, assessment is likely fair." ***Mich. Pub. Serv. Comm'n***, 545 U.S. at 435–36. Moreover, switching to a different apportionment scheme would be a burden on the State, particularly where the plaintiffs failed to "provide the details of their preferred alternative administrative system nor point to record evidence showing its practicality." *Id.* at 436.

The same considerations lead us to conclude that the Tennessee professional privilege tax is likewise fairly apportioned. Of course, as previously discussed, the professional privilege tax is assessed only against local activities; as such, there are no interstate activities to apportion from out-of-state activities. *See id.* at 437 (considering that the tax applies only to local activity in rejecting the plaintiffs' apportionment argument). Appellant has also failed to offer any cogent alternative method for apportioning a tax on the privilege of practicing certain professions within Tennessee's borders. For one, he has offered absolutely no suggestion of a scheme that could be applicable to non-attorney professionals. Instead, to the extent that Appellant could be said to have offered an alternative administrative method, Appellant focuses only on attorneys. Specifically, he appears to suggest a scheme that would calculate the tax based on the number of "cases" filed by an attorney in Tennessee per year, compared to their out-of-state cases. But Appellant's suggested apportionment scheme fails to take into account that the practice of law encompasses far more than filing cases in Tennessee's state courts.

Tennessee law provides that no person may either "engage in the practice of law or do law business" without being licensed to do so. Tenn. Code Ann. § 23-3-103 (noting that pro hac vice admission is also available to out-of-state attorneys). The practice of law is defined as

> the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies, or the soliciting of clients directly or indirectly to provide such services.

Tenn. Code Ann. § 23-3-101(3). "Law business" is defined as

> the advising or counseling for valuable consideration of any person as to any secular law, the drawing or the procuring of or assisting in the drawing for

valuable consideration of any paper, document or instrument affecting or relating to secular rights, the doing of any act for valuable consideration in a representative capacity, obtaining or tending to secure for any person any property or property rights whatsoever, or the soliciting of clients directly or indirectly to provide such services[.]

Tenn. Code Ann. § 23-3-101(1). Moreover, the Tennessee Supreme Court has held that the practice of law is even more expansively defined as any actions "'relat[ing] to the rendition of services for others that call for the professional judgment of a lawyer.'" *Waggoner v. Bd. of Pro. Resp.*, 673 S.W.3d 227, 235–36, 238 (Tenn. 2023) (holding that the above statutes are non-binding aids to the power of the Tennessee Supreme Court to define the practice of law (quoting *In re Burson*, 909 S.W.2d 768, 776 (Tenn. 1995)). Thus, the legal profession is far broader than a simple tally of cases that an attorney files each year; it involves advising clients, drafting contracts, and countless other tasks that cannot be easily quantified. In this way, we conclude that the burden on the State to impose a different apportionment scheme is impracticable.[9] *See Scheiner*, 483 U.S. at 297. Rather, the tax properly apportions the benefit that it confers: each individual, resident and non-resident alike, paying the professional privilege tax is in turn provided with the same benefit: the ability to practice their profession in Tennessee. Under these circumstances, we conclude that Appellant has failed to demonstrate that the professional privilege tax is unfairly apportioned.

In sum, the trial court correctly concluded that Appellant had not met his burden to demonstrate that Tennessee's professional privilege tax violates the four-part test under *Complete Auto Transit*. Rather, under the precedent set forth in *Michigan Public Service Commission*, the professional privilege tax is a non-discriminatory local fee that is internally consistent and fairly apportioned under the circumstances. Appellant's facial and as-applied challenges to the constitutionality of the Tennessee Professional Privilege Tax under the dormant Commerce Clause thus fail. The trial court's decision to grant summary judgment in favor of Appellee is therefore affirmed.

### V. CONCLUSION

The judgment of the Davidson County Chancery Court is affirmed, and this cause is remanded to the trial court for further proceedings as necessary and consistent with this

---

[9] At oral argument, Appellant asserted that the fact that three other states—New Mexico, Hawaii, and South Dakota—"collect a sales tax from attorneys for the services they provide" was proof that a non-flat tax could be imposed in this situation. But Appellant did not explain the scheme imposed by any of these States or how any of these schemes could be implemented in Tennessee. Moreover, this argument was raised for the first time at oral argument, as no statutes from any of these States were cited in Appellant's initial brief, reply brief, or in fact at any point in the trial court record. Arguments may not be raised for the first time at oral argument. *See State v. McCormick*, 494 S.W.3d 673, 679, n.6 (Tenn. 2016) (waiving an argument raised for the first time at oral argument).

- 13 -

Opinion. Costs of this appeal are taxed to Appellant, Thomas West, for which execution may issue if necessary.

S/ J. Steven Stafford     
J. STEVEN STAFFORD, JUDGE
